Steven D. CRAWFORD, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: June 19, 1990.
Decided: Sept. 21, 1990.

John R. Hiner, Jr. (argued) and Edward C. Pankowski, Jr., Asst. Public Defenders, Office of the Public Defender, Wilmington, for appellant.

Gary A. Myers (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal by the defendant, Stephen D. Crawford ("Crawford"), from a conviction in the Superior Court of murder in the first degree, as well as related charges of first degree arson and possession of a deadly weapon during the commission of a felony. Crawford contends that the trial court erred in refusing to suppress a statement made by him while in police custody after he had invoked his right to counsel. We conclude that Crawford's attempted invocation of his right to counsel was, at best, ambiguous and did not bar further questioning following police attempts at clarification. Finding no error in the Superior Court ruling, we affirm the convictions.

I

The facts pertinent to the defendant's allegations of error are essentially undisputed. On Saturday, January 30, 1988, Marcella Stewart was found murdered in her apartment. She had suffered numerous injuries from a beating and stabbing. The bed in which her body lay had been set on fire, presumably in an attempt to conceal her murder. Crawford, a former boyfriend of the victim, was a suspect in the ensuing investigation. The police made several attempts to locate Crawford in order to question him. During the period from Saturday through Monday, the police visited various locations and left business cards with requests that the defendant contact them.

On Tuesday, February 2, 1988, Crawford telephoned the police and spoke with one of the investigators, Officer Vietri. Vietri asked the defendant to come to the police station for questioning. In the course of the conversation, there was some mention of an attorney. According to Officer Vietri, the defendant asked whether he should bring an attorney. Officer Vietri responded that the defendant would have to decide that for himself. However, the defendant testified that he indicated to the officer that he was planning to contact an attorney before presenting himself at the police station.

After his telephone call to the police, Crawford attempted to locate an attorney. With the aid of relatives, he visited one law office and telephoned another. Unable to retain counsel, the defendant proceeded to the office of a third attorney who had previously represented his sister. While en route, the defendant was taken into custody by police officers, including Vietri, who had secured a search warrant authorizing them to secure handprints, hair samples

and fingernail scrapings from the defendant.

Officer Vietri advised the defendant of his *Miranda* rights and asked if he was willing to talk to the police. The defendant answered that he understood his rights and that he would be willing to talk. In response to Officer Vietri's subsequent question concerning his destination, the defendant responded, "I was looking for a lawyer." The defendant's concern about locating counsel was not relayed by Vietri to the other officers responsible for confinement or questioning.

Officer Vietri then turned the defendant over to other officers, who transported the defendant to the police station. While en route, the defendant initiated a conversation with one of the transporting officers, Officer Glose. Glose interrupted the defendant and read the *Miranda* rights a second time. The transporting officers did not interrogate the defendant, nor did they attempt to pursue the conversation initiated by the defendant.

Upon arrival at the police station, the defendant was handed over to the detectives responsible for the investigation. Detective Tabor, who was unaware that the defendant had been attempting to find a lawyer when apprehended, advised the defendant of his rights a third time. The defendant expressly agreed to talk to the officers without a lawyer present.[1] Tabor and another officer then interviewed the defendant orally. When an attorney contacted by Crawford's sister arrived at the police station and directed that the interview stop, the police ceased further questioning.

Although under detention for a body search, the defendant was not placed under arrest. Furthermore, he was aware that when the body search was completed he would be released. The statements made by the defendant during interrogation were generally exculpatory, consisting of explanations of his whereabouts at the time of the murder. Through further investigation, the police were able to demonstrate certain contradictions and inaccuracies in the defendant's statements. This evidence was presented at trial as proof of the defendant's guilt.

II

Crawford contends that his active search for an attorney constituted an unequivocal invocation of his Fifth Amendment right to counsel, and police questioning with knowledge of his effort contravened that right. Alternatively, he argues that even if his actions are deemed an ambiguous invocation, the failure of the police to clarify his intentions renders subsequent statements equally suppressible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). To the contrary, the State argues that the police proceeded properly in the face of Crawford's ambiguous conduct.

In *Miranda*, the Supreme Court extended the Fifth Amendment right to silence to include a right to counsel during interrogation. *Id.* 86 S.Ct. at 1630. Determining that custodial interrogation[2] is fundamentally coercive, the Court held that a detained suspect "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation ..." *Id.* at 1626. Failure to offer the assistance of counsel during questioning was held to undermine the protection of the Fifth Amendment privilege against self-incrimination. Therefore, the Court concluded that any evidence obtained in a custodial interrogation should be excluded where "procedural safeguards effective to secure the privilege against self-incrimination" were not utilized. *Id.* at 1612.

---

1. At the suppression hearing, the defendant's testimony indicated that he intended to talk to the police with or without counsel. Aware that his sister was continuing the search for an attorney, the defendant testified that he decided, nevertheless, to answer police questions.

2. Custodial interrogation was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 1612.

The *Miranda* court also attempted to define the standard by which invocations of the right to counsel should be evaluated. The Court held:

> If, however, [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

*Id.* at 1612. A second requirement was also added: the right to counsel could only be waived "voluntarily, knowingly, and intelligently." *Id.* The broad language concerning invocation and the strict waiver standard, on their face, appear to imply that even an ambiguous invocation of the right to counsel would require the cessation of questioning. However, subsequent Supreme Court decisions have significantly eroded the expansive standards proposed by the *Miranda* court.

### A.

■■■ Where a suspect has made an explicit request for the assistance of counsel, the duty imposed upon the police is clear: no further questioning may occur until counsel is provided or the suspect himself initiates further conversation. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[3] In *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the Court refined this standard by setting forth a two step inquiry. First, the court must determine whether the defendant actually invoked his right to counsel. Once this determination is made, further statements by the defendant are admissible only if (a) the defendant initiated further discussion, and (b) the defendant knowingly and intelligently waived the right to have an attorney present. *Id.* 105 S.Ct. at 493. This Court has applied this analysis in situations in which the invocation is concededly present. *See Wainwright v. State*, Del. Supr., 504 A.2d 1096 (1986); *see also Brank v. State*, Del.Supr., 528 A.2d 1185, 1187 (1987).

In its most recent consideration of the issue, the Supreme Court in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), examined an unequivocal invocation of the right to counsel that was ignored because the subsequent questioning involved an unrelated crime. In accord with previous decisions, the *Roberson* court held that the bright line rule set out in *Edwards* and *Miranda* required that all interrogation must cease after an unequivocal invocation of the right to counsel. Moreover, the Court found this strict rule to be applicable even if the questioning was directed to a crime different from the one related to the original invocation. Since the State claimed that the second interrogator was unaware of the original request, the *Roberson* court also held that subsequent interrogators have the burden of determining whether the right to counsel has been invoked.

### B.

Although it has not specifically addressed the question of an ambiguous invocation of the right to counsel, the Supreme Court has considered related issues on several occasions. *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (since the procedural rules of *Miranda* were not themselves rights protected by the constitution, strict adherence to the form suggested in *Miranda* was not constitutionally required, thus failure of interrogating officers to advise suspect of right to appointed counsel did not invalidate an otherwise voluntary statement); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (the defendant refused to sign a written waiver form, but orally agreed to make a statement. The defendant's actions and words were held to be sufficient to indicate that he knowingly and voluntarily waived his rights); *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979) (a *per se* invocation rule is limited to explicit requests for an attorney).

---

**3.** Explicit direction from an attorney to the police not to question a client without the presence of counsel is equally effective to bar questioning. *Bryan v. State*, Del.Supr., 571 A.2d 170 (1990).

■ In order for a defendant to rely upon *Miranda's* bar against further questioning, it must be shown that a request for counsel has been effectively conveyed to the interrogating officers. In *Alston v. State*, Del.Supr., 554 A.2d 304 (1989), we rejected a defendant's *pro forma* invocation which was never communicated to persons actually conducting the questioning. We there ruled that a prior latent desire to communicate with counsel will not override clear expressions during a custodial interrogation of a willingness to respond. Here, although the police were aware that Crawford was seeking counsel, he had not yet contacted an attorney at the time the search warrant was executed. The police were not required to defer execution of the warrant until Crawford succeeded in his search for an attorney, since the reading of his *Miranda* rights served to protect Crawford from any forced questioning during the execution of the search warrant. At no time did Crawford indicate that he would deal with the police only through counsel. Indeed, his suppression hearing testimony makes clear his intention of dealing directly with the police in an effort to persuade them that he was not involved in the crime under investigation.

Given the ambivalent nature of Crawford's conduct—his searching for an attorney but initiation of discussion with police after the initial *Miranda* warning—we do not view his actions as reflecting an unequivocal request for the assistance of counsel but rather a mixed or ambiguous invocation of that right. We thus are required to determine the manner in which the police may respond to a suspect's ambiguous invocation of his right to counsel.

### III

In *Smith v. Illinois*, the Supreme Court outlined the three approaches to ambiguous requests for an attorney:

Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous.... Others have attempted to define a threshold standard of clarity for such requests, and have held that

requests falling below this threshold do not trigger the right to counsel.... Still others have adopted a third approach, holding that when an accused makes an equivocal statement that 'arguably' can be construed as a request for counsel, all interrogations must immediately cease except for narrow questions designed to 'clarify' the earlier statement of the accused desires respecting counsel.

105 S.Ct. at 493 n. 3 (citations omitted). These standards vary in the degree to which the burden of clarity is placed on the defendant.

■ The *per se* rule requiring complete cessation of questioning upon an equivocal request for counsel defers to the "in any manner" language of *Miranda*, and places the burden of perceptual clarity entirely on the police. The leading case adopting this approach, *Maglio v. Jago*, 6th Cir., 580 F.2d 202 (1978), held that the statement, "maybe I should have an attorney" was an equivocal request for counsel. Relying on the specific *Miranda* "in any manner" language, the *Maglio* court found the ambiguous state of the defendant's mind as evidenced by his statement was sufficient to invoke the right to counsel, and that all further interrogation should have ceased.

■ The threshold standard looks to the totality of circumstances surrounding the ambiguous invocation in a search for intent with a heavy burden of clarity upon the defendant. *See e.g. United States v. Gordon*, 2d Cir., 655 F.2d 478 (1981) (statements made after unsuccessful attempt to contact attorney and re-reading of rights form were admissible in view of defendant's sophistication and cautious behavior).

■ The clarification approach requires the interrogating officer to limit his questions to those designed to elicit definitive indications of intent when a suspect makes an ambiguous request for counsel. In *Thompson v. Wainwright*, 5th Cir., 601 F.2d 768 (1979), the court ruled that after an equivocal request for counsel, the scope of a custodial interrogation should be "immediately narrowed to one subject and one

only. *Further questioning thereafter must be limited to clarifying that request until it is clarified." Id.* at 771 (emphasis in original). The court also determined that subsequent questions leading to responses without the presence of counsel failed to clarify the suspect's statement that he desired to tell his story to an attorney first.

In an earlier case, the Fifth Circuit had examined an interrogator's discussion of the suspect's options regarding the right to counsel after the suspect ambiguously indicated he wished to consult an attorney. In *Nash v. Estelle,* 5th Cir., 597 F.2d 513 (1979), the court held that the interrogator's subsequent discussion of the suspect's right to counsel, which included the option of complete cessation of questioning until an attorney was provided, was sufficiently narrow not to infringe upon the defendant's *Miranda* rights.

The Ninth Circuit, in *United States v. Fouche,* 9th Cir., 833 F.2d 1284 (1987) (en banc), was required to determine whether a second reading to the suspect of his *Miranda* rights could operate as a clarification. Recognizing that "a rote repetition of the *Miranda* rights does not prove that a defendant understood and voluntarily waived those rights," the *Fouche* court determined that *"Nash* does not require a mechanical and talismanic repetition of the word 'lawyer' when the *Miranda* warnings have been given twice, in great detail, and the suspect has understood his rights." *Id.* at 1288–89. Because the agent's questions "did not impinge on the exercise of the suspect's continuing option to cut off the interview," the *Fouche* court held that the interrogation subsequent to the ambiguous invocation was designed to clarify, and not to elicit incriminating information. *Id.* at 1289 (quoting *Nash,* 597 F.2d at 518). Thus, the agent had refrained from further interrogation until he had determined that Fouche had knowingly and voluntarily waived his right to counsel.

The Eleventh Circuit in *United States v. Gonzalez,* 11th Cir., 833 F.2d 1464 (1987), faced an ambiguous request similar to the one in this case. The court considered the admissability of a confession given after a defendant had informed the police that she had sought legal counsel but found it too expensive to have counsel accompany her to interrogation. The agents gave her *Miranda* warnings after explaining to her the booking process, and Gonzalez then gave a confession. The *Gonzalez* court held that "[a]ny ambiguity in Gonzalez's statement about her inability to retain counsel was resolved by her failure to request counsel or the presence of counsel after receiving the *Miranda* warning and proceeding with her confession." *Id.* at 1466.

In comparison, the Eleventh Circuit later, in *Towne v. Dugger,* 11th Cir., 899 F.2d 1104 (1990), held that the clarification test was not satisfied where accusatory statements and repetition of the *Miranda* rights was the interrogator's response to the suspect's question concerning the need for counsel. Analogizing to *United States v. Cherry,* 5th Cir., 733 F.2d 1124 (1984) and *United States v. Fouche, supra,* the *Towne* court observed:

in both cases, as in the present case, the interrogating officer was asked by the defendant for advice as to whether the defendant should exercise his right to get an attorney. Such questions reveal to the interrogating officer that the defendant is contemplating exercising his right to have an attorney present, and under the rule established in *Nash* and *Thompson,* the officer should clarify the defendant's wishes before preceding further.

*Id.* at 1109. The *Towne* court held that since an equivocal statement was made and there was no clarification or initiation, the confession was obtained in violation of the defendant's Fifth Amendment rights. The *Gonzalez* decision was distinguished on the fact that the interrogators in *Gonzalez,* as here, did not make accusatory statements in response to the ambiguity, and the right to an appointed counsel was made clear by the *Miranda* warning.

█ In our view, the clarification approach adopted by many Federal circuits and embraced as well by the highest courts

of several states [4] has much to recommend it. The *per se* rule which bars all statements simply because a suspect articulates, in the most tentative and general fashion, a desire to consult with counsel is too inflexible and ill serves the needs of reasonable police investigation. We view the threshold test as merely establishing the context or quantum of evidence which a court will examine in the face of a right to counsel claim. While *Miranda* imparts an affirmative duty to advise a suspect of the right to counsel incident to a custodial interrogation, the right is subject to waiver simply by proceeding to respond. Where a suspect does not unequivocally invoke that right, the police should be entitled to attempt to determine the suspect's intention. We thus endorse the clarification approach which may include, as occurred here, the repeating of *Miranda* warnings as a means of emphasizing the defendant's constitutional right to counsel. U.S. Const. amend VI; Del. Const. art. I, § 7. If, however, the police make additional inquiries concerning a suspect's intentions, the clarifying questions may not coerce or intimidate the suspect or otherwise discourage his effort to secure counsel, if that is his intention. Nor may the police tender any legal advice or attempt to dissuade the suspect from pursuing an intended course. Repeated *Miranda* warnings may prove to be of limited clarifying assistance in certain situations but they at least serve the purpose of emphasizing the suspect's options and placing the responsibility on the suspect to either continue the questioning or remain silent until counsel is available. If clarifying questions or repeated *Miranda* warnings indicate that the suspect does not wish the assistance of counsel, the interrogation may continue.

■ In this case, Crawford's actions and statements to the police conveyed mixed signals concerning his willingness to speak

without the presence of counsel. When he first broached the subject in his telephone call to Officer Vietri, Crawford was advised that he, himself, would have to decide whether he needed an attorney. From the time he was taken into custody he was given his *Miranda* warnings on three separate occasions, on the second occasion in response to the defendant's initiation of discussion while being transported to the police station. While the defendant's pre-custodial conduct suggested that he wanted to confer with an attorney, at no time while in police custody did he assert a desire to consult with counsel before questioning, even though he was aware that his sister was continuing the search for an attorney. At best, Crawford's actions reflected an interest in securing counsel prior to custody but evidencing no unwillingness to discuss the matter with the police while in custody after thrice being advised of his right to remain silent without the presence of counsel. Under the circumstances, we believe the police acted in good faith in the use of the repeated *Miranda* warnings in an effort to clarify Crawford's intentions. His statements were thus clearly admissible in evidence at trial.

## IV

In refusing to suppress Crawford's statements, the trial court noted that in Crawford's testimony he did not feel that he needed counsel present before talking to the police. Crawford now questions the trial court's use of his suppression hearing testimony in the determination that he did not desire counsel during interrogation. In effect, Crawford argues that any ambiguity in his invocation of the right to counsel should be resolved on the facts manifested at the time of the interrogation, without consideration of his unarticulated

4. See *State v. Lamp*, Iowa Supr., 322 N.W.2d 48 (1982) (holding that phone calls to attorney coupled with reading of rights and waiver did not invoke right to counsel since any ambiguity was clarified); *cf. Daniel v. State*, Wyo.Supr., 644 P.2d 172, 177 (1982) (holding "If it is difficult for the police officer to determine whether a suspect indeed intends to invoke his right to

have an attorney present, the officer may seek clarification of the suspect's desires, as long as he does not disguise the clarification as a subterfuge for coercion or intimidation."); *see also Cannady v. State*, Fla.Supr., 427 So.2d 723 (1983); *Russell v. State*, Tex.Cr.App., 727 S.W.2d 573 (1987).

intention revealed in the suppression hearing.

■■■ The use of suppression hearing testimony to determine a defendant's subjective intention at the time of interrogation is an acceptable practice. In *Connecticut v. Barret*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), the Supreme Court considered contradictory statements concerning the desire to communicate with the police without counsel. Although the *Barret* court found the defendant's statements to be clear and unambiguous, in support of that determination, the Court explicitly relied on the defendant's suppression hearing testimony as to his subjective understanding of the *Miranda* warnings. *See id.* 107 S.Ct. at 832–33.

In *Delap v. Dugger*, 11th Cir., 890 F.2d 285 (1989), the Court confronted the question of the use of suppression testimony in an equivocal request context. The defendant had indicated to his interrogators that he was represented by counsel in an unrelated matter. The court held that this alone was not even an ambiguous invocation of the right to counsel. The defendant's suppression hearing testimony as to his intent at the time of interrogation was utilized by both the district court and on appeal. Delap argued that the use of post-request statements to clarify his initial statement was a violation of *Smith v. Illinois, supra.* The *Delap* court held that the purpose of the *Smith* prohibition on the use of post-request statements to cast doubt on the initial request was to prevent deliberate or unintentional overreaching by the interrogating officers. Since the use of the defendant's testimony for a contextual assessment at trial did not implicate the concerns of *Smith*, its admission was deemed acceptable.

We view the trial court's use of Crawford's testimony concerning his intent at the time of the questioning as appropriate and not inconsistent with the holding in *Smith v. Illinois.* Moreover, there is no logical reason to exclude Crawford's testimony, since the objective of the Fifth Amendment right to an attorney during interrogation would in no way be compromised by the admission of *post factum* statements of intent.

We conclude that the defendant's invocation of his right to counsel were at best equivocal and the police did not violate his Fifth Amendment right to counsel in their subsequent questioning of him. The trial court correctly refused to suppress the disputed statements and the judgment of conviction is accordingly, affirmed.