Brian STECKEL, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Nos. 27 and 45, 1997.

Supreme Court of Delaware.

Submitted: April 28, 1998.
Decided: May 22, 1998.

Jerome M. Capone and Joseph A. Gabay, Wilmington, for appellant.

Loren C. Meyers (argued), Chief of Appeals Division, William E. Molchen and Thomas E. Brown, Deputy Attorneys General, Department of Justice, Wilmington, for appellee.

**1.** In addition to a charge of intentional killing, Steckel was charged with two counts of reckless felony murder.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court En Banc.

WALSH, Justice:

This is an automatic and direct appeal after a capital murder trial and a penalty hearing by the appellant/defendant, Brian D. Steckel ("Steckel"). On October 2, 1996, a jury convicted Steckel on three counts of murder first degree,[1] two counts of burglary second degree, one count of unlawful sexual penetration first degree, one count of unlawful sexual intercourse first degree, one count of arson first degree, and one count of aggravated harassment, related to the rape and murder of Sandra Lee Long and to the harassment of Susan Gell.

Pursuant to 11 *Del.C.* § 4209(b)(1), a separate penalty hearing was conducted, at the conclusion of which the same jury recommended the death penalty by a vote of eleven to one. After consideration of the factors enumerated in 11 *Del.C.* § 4209(d), the Superior Court concurred with the jury's recommendation and imposed a sentence of death for each of the three convictions of first degree murder.

On appeal, Steckel challenges both the convictions and death sentences. We find no error with respect to either the guilt phase or the penalty phase of Steckel's trial and, therefore, affirm both the convictions and the death sentences.

## I.

The evidence presented at trial reflected the following events. Around noon on September 2, 1994, Steckel gained entrance to Long's apartment under the pretense of needing to use her telephone. Once inside, he ripped the telephone cord out of the wall. He then savagely attacked Long, strangling her to the point of unconsciousness with both nylon stockings and a tube sock that had been brought for that purpose. Before losing consciousness, Long fought back, biting

Steckel's finger hard enough to cause it to bleed profusely. Steckel next proceeded to rape Long anally, at one point achieving penetration with a flat-head screwdriver that he had also brought for that purpose. Long regained consciousness during this part of the attack.

When finished with the attack on Long, Steckel sought to conceal his crime by setting fire to the apartment in two places with the final item he brought to the crime scene, a cigarette lighter. On his way out, he locked the door behind him to minimize the possibility of escape or rescue. Despite heroic efforts of passersby, the fire consumed the apartment and killed Long even as she sought to escape the searing flames through her bedroom window.

That afternoon, *The News Journal* received a phone call from an anonymous male who claimed responsibility for Long's murder and named Susan Gell as his next victim. *The News Journal* immediately alerted Wilmington police, who contacted Gell and placed her in protective custody. Gell informed police that, over the course of the previous month, she had received threatening phone calls, which eventually had been traced to Steckel. According to Gell, these calls were lurid and sexual and included references to anal rape. Police soon concluded that Steckel was a likely suspect in the attack on Long, and they succeeded in apprehending him early the next morning.

Over the course of several interviews on September 3—during which police repeatedly advised him of his *Miranda* rights—Steckel confessed to the rape and murder of Long. His account of the incident was accurate down to the most disturbing details, including his use of the screwdriver and the manner in which he set fire to the apartment.

He told police where to find the items used in the attack, which were recovered. Steckel's identity as the assailant was later confirmed through DNA testing and analysis of the bite marks inflicted by Long during the struggle.

Steckel stood trial on various charges arising from the incident. After an eleven day trial, a Superior Court jury found Steckel guilty of all counts. The trial proceeded to the penalty phase, where the jury was instructed that, by its guilty verdicts on the felony murder counts, the existence of a statutory aggravating circumstance had been proven beyond a reasonable doubt. *See* 11 *Del.C.* § 4209(e)(1)j.[2]

At the penalty hearing, the State presented evidence that the following non-statutory aggravating circumstances existed: (i) the vicious circumstances surrounding the commission of the murder; (ii) premeditation and substantial planning; (iii) victim impact; (iv) Steckel's prior criminal record; (v) Steckel's other criminal activities, including obscene phone calls, assault, terroristic threats, and disorderly conduct; (vi) Steckel's plan and intent to escape from prison and commit murder as evidenced by his letters[3]; (vii) Steckel's total cruelty and lack of remorse in writing seven letters to the victim's mother; (viii) Steckel's prison record regarding disciplinary actions and lack of respect toward authority; (ix) the victim was defenseless; and (x) the murder was committed without provocation.

The defense presented evidence that the following mitigating factors existed: (i) cooperation with police in confessing to the crime; (ii) history of alcohol and substance abuse; (iii) childhood neglect and emotional abuse; (iv) childhood sexual abuse; (v) limited education; (vi) diagnoses of Attention Deficit

---

**2.** 11 *Del.C.* § 4209(e)(1) provides:

In order for a sentence of death to be imposed, the judge must find that the evidence establishes beyond a reasonable doubt the existence of at least 1 of the following aggravating circumstances ...:

\* \* \*

j. The murder was committed while the defendant was engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any degree of rape, unlawful sexual intercourse, arson, kidnaping, robbery, sodomy or burglary.

**3.** While awaiting trial, Steckel wrote over 75 letters to the judge originally assigned to handle the matter, female realtors in the area, the victim's mother, various employees of the Attorney General's Office, including the two prosecutors assigned to the case, and others. These letters revealed threats and intent to kill Deputy Attorney General Barron, Judge Goldstein, and thirteen others.

Disorder and Antisocial Personality Disorder, as testified to by psychiatrists; (vii) Steckel's value and contribution to his family; and (viii) remorse. Steckel testified during the presentation of this evidence and exercised his right of allocution pursuant to 11 *Del.C.* § 4209(c)(2).

The jury found that the aggravating circumstances outweighed mitigating circumstances by a vote of eleven to one. In reaching its independent decision, the Superior Court determined that the same statutory aggravating circumstance had been proven beyond a reasonable doubt. The trial court found that all the nonstatutory aggravating circumstances presented by the State existed and were relevant. The court also determined the existence of all the mitigating circumstances presented by the defense and their relevancy, although some in a limited manner. The court noted, that, while testifying psychiatrists agreed that Steckel suffered from psychological disorders, they considered him to be a "dangerous individual" with the ability to distinguish right from wrong and capable of committing this murder. The Superior Court characterized Steckel's conduct as "exceedingly depraved, cruel and vicious" and concluded that the aggravating circumstances "clearly and heavily" outweighed the mitigating circumstances. On January 8, 1997, Steckel was sentenced to death.

## II.

With respect to the guilt phase of the trial, Steckel contends that Superior Court erred by: (i) failing to sever the aggravated harassment count; (ii) failing to suppress a statement given by him to police and the evidence flowing from that statement; (iii) denying his motion for a mistrial; and (iv) refusing to merge his conviction for reckless felony murder into his conviction for intentional murder. We address these claims *seriatim.*

## A.

Steckel argues that the Superior Court abused its discretion by failing to sever the aggravated harassment count because that charge pertains to a different victim, Gell, and is unrelated to the counts involving Long. *See* Super.Ct.Crim.R. 8(a). Steckel contends that he was prejudiced by the denial of severance because the jury was presented with inflammatory evidence of his sexual proclivity.

We find that the Superior Court did not abuse its discretion by denying severance. Severance is appropriate where the defendant may suffer prejudice because:

(1) the defendant was subject to embarrassment or confusion in attempting to present different defenses to different charges; (2) the jury may improperly infer a general criminal disposition on the part of the defendant from the multiplicity of charges; and (3) the jury may accumulate evidence presented on all offenses charged in order to justify a finding of guilt of particular offenses.

*State v. McKay,* Del.Supr., 382 A.2d 260, 262 (1978). However, "where evidence concerning one crime would be admissible in the trial of another crime, there is no prejudicial effect in having a joint trial." *Bates v. State,* Del.Supr., 386 A.2d 1139, 1142 (1978). Generally, evidence of one crime is admissible in the trial of another crime when it has "independent logical relevance" and its probative value outweighs prejudice to the defendant. *Getz v. State,* Del.Supr., 538 A.2d 726, 730 (1988); D.R.E. 404(b).

The harassment of Gell clearly has "independent logical relevance." The phone calls to *The News Journal* led police to Steckel because of his harassment of Gell. The evidence of the aggravated harassment was, therefore, admissible and, consequently, Steckel suffered no prejudice requiring severance. *See Bates,* 386 A.2d at 1142. Further, any prejudice to Steckel was diminished by the jury instructions.[4] *See Skinner v. State,* Del.Supr., 575 A.2d 1108, 1120 (1990). Finally, we note that severance is not mandated simply because the crimes were committed against different people and with a two week time lapse between them. *See Howard v. State,* 704 A.2d 278, 280–81 (1998); *Younger v. State,* Del.Supr., 496 A.2d 546, 550 (1985). Accordingly, we find no error in the denial of Steckel's motion for severance.

4. The jury was instructed that "[y]ou must separately consider each of the nine charged offenses and must reach a separate verdict as to each, uninfluenced by your verdict in the other.... Each verdict must be unanimous."

### B.

Steckel asserts that his federal and state constitutional rights were violated and that the Superior Court erred by denying his motion to suppress certain statements made to the police and the evidence flowing from those statements. At approximately 6:15 p.m. on September 3, while in transit from his cell to an interview room, and following previous statements preceded by *Miranda*[5] warnings, Steckel asked a police detective, "Should I contact a lawyer?" In response to Steckel's question, the detective stated that he could not provide legal advice, but that Steckel had the right to speak to an attorney.

Before entering the interview room, Steckel was permitted to make several telephone calls. He called only his family and friends and did not call an attorney. After the phone calls, Steckel was given *Miranda* warnings for the third time and again acknowledged that he was aware of his rights. He then spoke to police and signed a consent form permitting police to obtain a cast of the bite mark on his finger. At approximately 7:00 p.m., the cast was made.

Steckel argues that his question was sufficient to require police to clarify whether he was invoking his constitutional right to the assistance of counsel and that, because police pursued further questioning without clarification, his constitutional rights were violated. *See Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *Crawford v. State,* Del.Supr., 580 A.2d 571 (1990).

■■■ We find unpersuasive Steckel's reliance upon *Davis.* In *Davis,* the United States Supreme Court held that, under the federal constitution, police officers are not required to ask clarifying questions and, after a knowing and voluntary waiver of *Miranda* rights, "may continue questioning until and unless the suspect clearly requests an attorney." 512 U.S. at 461, 114 S.Ct. at 2356. This is a "bright-line" rule—if the suspect's statement is not "an unambiguous or un-

equivocal request for counsel," the officers have no obligation to cease interrogation. *Id.* at 461–62, 114 S.Ct. at 2356. Steckel did not make such a request, and, thus, there was no violation of his federal constitutional rights. *See Diaz v. Senkowski,* 2d Cir., 76 F.3d 61, 63–64 (1996) (holding that "do you think I need a lawyer" did not constitute a request for counsel); *Irons v. Vasquez,* 9th Cir., 62 F.3d 1424 (1995), *cert. denied,* 516 U.S. 978, 116 S.Ct. 484, 133 L.Ed.2d 411 (1995) (holding that "maybe I should talk to my lawyer" did not constitute a request for counsel).

■■■ This Court's decision in *Crawford,* announced four years before *Davis,* although endorsing a more exacting standard of police conduct, presents no bar to the admissibility of Steckel's statements as a matter of state constitutional law. In *Crawford,* this Court adopted a "clarification approach," stating

[w]e thus endorse the clarification approach which may include, as occurred here, the repeating of *Miranda* warnings as a means of emphasizing the defendant's constitutional right to counsel. U.S. Const. amend VI; Del. Const. art. I, § 7. If, however, the police make additional inquiries concerning a suspect's intentions, the clarifying questions may not coerce or intimidate the suspect or otherwise discourage his effort to secure counsel, if that is his intention. Nor may the police tender any legal advice or attempt to dissuade the suspect from pursuing an intended course. Repeated *Miranda* warnings may prove to be of limited clarifying assistance in certain situations but they at least serve the purpose of emphasizing the suspect's options and placing the responsibility on the suspect to either continue the questioning or remain silent until counsel is available. If clarifying questions or repeated *Miranda* warnings indicate that the suspect does not wish the assistance of counsel, the interrogation may continue.

580 A.2d at 577. We find that the clarification approach, which has been adopted by the majority of jurisdictions,[6] represents good police practice. *See Davis,* 512 U.S. at 461, 114 S.Ct. at 2356. We, thus, reaffirm that clarification, as described in *Crawford,* is

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. *Davis,* 512 U.S. at 467 & n. 1, 114 S.Ct. at 2359 & n. 1 (Souter, J. concurring).

required pursuant to Article I, § 7 of the Delaware Constitution.[7]

■■■ The actions taken by police in response to Steckel's question concerning counsel were appropriate under the rule announced in *Crawford.* Steckel's state constitutional right to counsel was emphasized not only by a third *Miranda* warning, after which Steckel agreed to cooperate, but also by the detective's immediate response informing Steckel that he had the right to counsel. The police took no action nor made any comment that would have dissuaded Steckel from seeking counsel. Moreover, Steckel was given the opportunity to contact an attorney prior to the resumption of questioning, thus satisfying the "option" goal emphasized in *Crawford.* The fact that Steckel used the opportunity to call relatives is no reflection on the conduct of the police. We find no violation of Steckel's state constitutional rights and affirm the Superior Court's ruling on suppression of his statements and resulting evidence.

### C.

Steckel next argues that the Superior Court abused its discretion by failing to grant his motion for a mistrial. During trial, the State played for the jury an audio tape of Steckel's interrogation. At one point, the jury heard a statement by a questioning officer that the prosecution had previously agreed to redact from the tape. Specifically, the jury heard the officer say to Steckel, "You told me yesterday that you killed other people as well." The jury did not hear Steckel's response. No evidence of other murders was presented, and a police sergeant later testified that police had found "no evidence" that Steckel had been involved in other murders. According to Steckel, how-

ever, this comment was highly prejudicial because it could have led the jury to conclude that he was a serial killer.[8]

Although the mistake was inadvertent, Steckel moved for a mistrial, which the Superior Court denied, finding that "the jury may not have connected the fact that there are other alleged acts." Following the denial of Steckel's motion, the Superior Court gave the following cautionary instruction:

Ladies and gentlemen, I apologize for the delay. After conferring with the attorneys involved in the case, I have ruled that the audiotape which you were going to hear is not admissible and we will pick up the interview of Mr. Steckel from the videotape. You are ordered to disregard what you may have heard from the audiotape and are not to speculate as to what was contained on it.

■■■■ A trial judge should grant a mistrial only where there is "manifest necessity" or the "ends of public justice would be otherwise defeated." *Fanning v. Superior Court,* Del.Supr., 320 A.2d 343, 345 (1974) (quotations omitted). *Accord Bailey v. State,* Del. Supr., 521 A.2d 1069, 1075–77 (1987). "As a general rule, a curative instruction is usually sufficient to remedy any prejudice which might result from inadmissible evidence admitted through oversight." *Zimmerman v. State,* Del.Supr., 628 A.2d 62, 66 (1993). *See also Ferguson v. State,* Del.Supr., 642 A.2d 772, 778 (1994); *Dawson v. State,* Del.Supr., 637 A.2d 57, 62 (1994). *Accord Lawhorn v. State,* Ind.Supr., 452 N.E.2d 915, 919–20 (1983) (affirming trial court decision not to grant a mistrial where a portion of an audio tape was inadvertently played to the jury and the trial court "admonished the jury to disregard that part of the tape").

■■■ Despite finding that the jury may not have interpreted the question as applying

---

7. This Court has interpreted many aspects of the right to counsel guaranteed by Article I, § 7 as affording rights identical to those afforded by the federal constitution. *See Lovett v. State,* 516 A.2d 455 (1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 504 (1987). In *Bryan v. State,* Del.Supr., 571 A.2d 170, 177 (1990), however, this Court held that, with respect to counsel's attempt to see a client/suspect, Article I, § 7 affords protections greater than those afforded by the federal constitution. *Compare Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986).

8. In the opening brief, Steckel "notes" that "a previous malfunction had occurred during the playing of the crime scene video ." His trial counsel did not move for a mistrial on the basis of this malfunction. Instead, counsel objected to the admission of the portion of the video shown as a result of that malfunction and was overruled. Because Steckel has not appealed from the Superior Court decision on that objection and because he does not argue that the mistake concerning the video tape justifies a mistrial, the Court will not consider any error arising from the State's failure to stop the video tape at the agreed upon point. *See* Supr.Ct.R. 8.

to other murders, the Superior Court took additional steps to assure that Steckel had not been prejudiced—giving a curative instruction and ruling the audio tape inadmissible. Accordingly, the trial court did not abuse its discretion by denying Steckel's motion for a mistrial, and its ruling is affirmed. *See State v. Gates,* Tenn.Crim.App., 1997 WL 602896, at *4–5 (Sept. 30, 1997) (affirming trial court's refusal to grant a mistrial where, because a prosecutor failed to stop an audio tape in time, the jury inadvertently heard a portion of the tape in which a police officer questioned the defendant about other times he had been in trouble).

### D.

■ Steckel's next argument, in effect, is that the failure to merge his conviction for intentional murder (Count 9) with his conviction for reckless felony murder for causing Long's death in the course of and in furtherance of the commission of first degree arson (Count 10) violates the prohibition against multiple punishments for the same offense. *See* U.S.Const. amend VIII. He asserts that, where the purpose of setting a fire is to intentionally take someone's life, all similar offenses, including causing the death in the course of and in furtherance of the commission of the arson, should be deemed to merge upon conviction and require the imposition of only one sentence for those offenses.[9] He requests that this Court reconsider our holding in *Chao v. State,* Del.Supr., 604 A.2d 1351 (1992), which permits multiple sentencing in a similar setting.

In *Chao,* the defendant argued that convictions for felony murder and intentional murder resulting in a single person's death should be merged into a single sentence. This Court rejected that argument noting three significant factors: (i) multiple convictions for a single death are constitutionally permissible[10]; (ii) the General Assembly intended such conviction and sentencing scheme; and (iii) multiple convictions serve

the purpose of assuring punishment in the event that one of the multiple convictions is later invalidated. 604 A.2d at 1361 n. 10. *See also Liu v. State,* Del.Supr., 628 A.2d 1376 (1993).

Steckel has failed to demonstrate that the underpinnings of *Chao* have been eroded, and, thus, the principle of *stare decisis* weighs heavily against him. *See Neal v. United States,* 516 U.S. 284, 294–95, 116 S.Ct. 763, 768–69, 133 L.Ed.2d 709 (1996); *Aizupitis v. State,* Del.Supr., 699 A.2d 1092, 1094 (1997). Accordingly, the decision not to merge Counts 9 and 10 is affirmed.

### III.

Steckel mounts two challenges with respect to the propriety of his death sentences: (i) Delaware's death penalty statute is unconstitutional; and (ii) his death sentences are disproportionate to the sentence imposed in similar cases.

### A.

Steckel asserts that 11 *Del.C.* § 4209(e)(1) is unconstitutional in three respects. First, he argues that, because the statute contains an unduly large number of statutory aggravating circumstances, it fails to genuinely narrow that class of persons eligible for the death penalty. *See Zant v. Stephens,* 462 U.S. 862, 876–78, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). Second, he argues that the statute impermissibly precludes consideration of mercy or leniency by the jury or the sentencing judge. Third, he argues that the statute unlawfully requires the sentencing judge to impose a death sentence upon certain findings in violation of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

■ In a well-reasoned memorandum opinion, the Superior Court addressed all the arguments presented in this portion of Steckel's appeal and found them to be without merit, applying the precedents of this Court and the United States Supreme Court. With respect to Steckel's first argument, we find the relevant inquiry to be whether "the sentencer fairly could conclude that an aggravating circumstance applies to every defendant

---

9. It is important to note that Steckel was also convicted for reckless felony murder for killing Long in flight after committing first degree unlawful sexual intercourse.

10. *See Flamer v. State,* Del.Supr., 490 A.2d 104, 118 (1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983) and 474 U.S. 865, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985).

eligible for the death sentence," not, as Steckel asserts, whether, taken in combination, Delaware's statutory aggravating circumstances apply to virtually all defendants convicted of first degree murder. *Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993). After review of § 4209(e)(1), we conclude that no one of those factors could be applied to every defendant convicted of first degree murder in Delaware. *See Stevenson v. State,* Del.Supr., 709 A.2d 619, 635–36 (1998). Further, we note that Delaware has approximately the same number of statutory aggravating circumstances as other states.[11]

▮▮▮ Turning to Steckel's other assertions, his argument concerning mercy or leniency has been rejected both by this Court and by the United States Supreme Court. *See Saffle v. Parks,* 494 U.S. 484, 492–93, 110 S.Ct. 1257, 1262–63, 108 L.Ed.2d 415 (1990); *State v. Ferguson,* Del.Super., Cr. A. No. IN91–10–0576, 1995 WL 413269 (Apr. 7, 1995), Mem.Op. at 13–16, *aff'd,* Del.Supr., 676 A.2d 902, Holland, J. (1996) (ORDER), *cert. denied,* —— U.S. ——, 117 S.Ct. 524, 136 L.Ed.2d 411 (1996). Further, such factors are taken into account through mitigating circumstances and, because § 4209 does not limit mitigating evidence, defendants may always argue for mercy. *See State v. Cohen,* Del.Supr., 604 A.2d 846, 849–50 (1992); *Flamer v. State,* Del.Supr., 585 A.2d 736, 757 (1990). His argument that 11 *Del.C.* § 4209(d)(1) is violative of *Furman* has also been rejected both by this Court and by the United States Supreme Court. *See Boyde v. California,* 494 U.S. 370, 377, 110 S.Ct. 1190, 1196, 108 L.Ed.2d 316 (1990) (upholding similar mandatory language); *Proffitt v. Florida,* 428 U.S. 242, 260–61, 96 S.Ct. 2960, 2970–71, 49 L.Ed.2d 913 (1976) (White, J. concurring) (holding that Florida's similar statutory

scheme does not run afoul of *Furman*); *Cohen,* 604 A.2d at 850. Accordingly, we uphold Delaware's death penalty statute as constitutional.

**B.**

In an appeal from a death sentence, this Court is mandated to determine: (i) whether the evidence supports, beyond a reasonable doubt, the trial court's finding of a statutory aggravating circumstance[12]; (ii) whether the death penalty was "either arbitrarily or capriciously imposed or recommended"; and (iii) whether the death penalty was "disproportionate to the penalty recommended or imposed in similar cases arising under this section." 11 *Del.C.* § 4209(g)(2).

**1.**

▮▮▮ There is substantial evidence, including Steckel's confession, supporting, beyond a reasonable doubt, the trial court's finding of the statutory aggravating circumstance that Long's murder was committed while Steckel was engaged in the commission of or flight after committing first degree unlawful sexual intercourse and first degree arson. 11 *Del.C.* § 4209(e)(1)j.[13] In addition, because the jury found Steckel guilty on the counts of unlawful sexual intercourse first degree and arson first degree, this statutory aggravating circumstance was established as a matter of law. *See Ferguson,* 642 A.2d at 785.

**2.**

▮▮▮ In determining whether the imposition of the death sentence was arbitrary or capricious, this Court generally examines the aggravating and mitigating circumstances proven in the matter. *See Ferguson,* 642 A.2d at 785–88; *Dawson,* 637 A.2d at 67.

---

11. *See State v. Steckel,* Del.Super., 708 A.2d 994, 999–1001 (1996) (noting that, although Delaware has a large number of statutory aggravating circumstances, other states combine circumstances that Delaware lists separately). We note that, although too many aggravating circumstances may violate the principles enunciated in *Furman v. Georgia* and *Zant v. Stephens,* that limit has not yet been reached in Delaware.

12. While Steckel does not challenge the Superior Court's finding of a statutory aggravating cir-

cumstance or contend that the death sentence was arbitrarily or capriciously imposed, this Court must nonetheless consider the issues. *See* 11 *Del.C.* § 4209(g)(2).

13. While the State did not seek to prove the additional statutory aggravating circumstance that the murder was "premeditated and the result of substantial planning," the trial court found that this factor existed as a nonstatutory aggravating circumstance. 11 *Del.C.* 4209(e)(1)u.

In its forty-two page sentencing report, the Superior Court carefully addressed the statutory and nonstatutory aggravating circumstances and the mitigating circumstances presented at the penalty hearing. We find that the record reflects that the Superior Court's decision to impose the death sentence was "'the product of a deliberate, rational and logical deductive process'" and conclude that the imposition of the death sentence was neither arbitrary nor capricious. *Ferguson,* 642 A.2d at 788 (quoting *Red Dog v. State,* Del.Supr., 616 A.2d 298, 310 (1992)).

### 3.

 In determining whether the imposition of the death sentence was proportionate to the sentence recommended or imposed in similar cases, the Court compares the case *sub judice* with the "universe" of cases [14] and considers objective factors "such as the gravity of the offense, the circumstances of the crime, the harshness of the penalty, and the statutory scheme in effect at the time." *Lawrie v. State,* 643 A.2d 1336, 1344–45, *cert. denied* 513 U.S. 1048, 115 S.Ct. 646, 130 L.Ed.2d 551 (1994).

In its Findings After Penalty Hearing, the Superior Court noted that

[b]y any standard acceptable to society, Mr. Steckel's conduct was exceedingly depraved, cruel and vicious. The Court is outraged by the brutal force of the attack, the deviant behavior of the defendant, and the horror inflicted upon his innocent and defenseless victim.... The murder was unprovoked, unnecessary, unconscionable, and committed for no other reason than to fulfill the deviant sexual and animalistic desires of the defendant.

Throughout his life, the defendant has demonstrated an unwillingness to live by the rules which govern a civilized society. His school, detention, and custodial records reflect a pattern of total disregard for common decency and a lack of respect for the rights and feelings of others....

It is also difficult to resolve whether the real Brian Steckel is found in the disgusting and vile letters he wrote to the victim's mother and his threats to kill prosecutors and judges, or is the real Brian Steckel the one who expressed his love for his mother and family and a willingness to face the consequences of his acts during allocution.... [T]he Court believes this momentary expression of compassion and caring was more a realization of the pain he has caused the ones who truly love him, his family, rather than a metamorphic change in personalities. Mr Steckel is and remains a very dangerous individual.

The Superior Court concluded that "[a]lthough the Court has found certain mitigating circumstances as contended by the defense, they are clearly and heavily outweighed by the statutory and nonstatutory aggravating circumstances in this case."

Steckel's reliance upon *Chao, Liu,* and *Fleming v. State,* Del.Supr., No. 193, 1991, Walsh, J., 1992 WL 135159 (Mar. 11, 1992) (ORDER), is unpersuasive. In those cases, the defendants were convicted of first degree murder for deaths resulting from arson but were sentenced to life imprisonment. Their sentences, however, were imposed under a statutory scheme requiring a unanimous jury verdict in the penalty phase, which is "significantly dissimilar" to the current scheme. *Lawrie,* 643 A.2d at 1350. Thus, "it cannot be held that the death sentences imposed by the trial judge in this case are necessarily 'disproportionate' to the penalties imposed in *Chao, Liu,* and *Fleming.* Those cases are not 'similar cases arising under this section.'" *Id.*

 The nonstatutory aggravating circumstances found to have been established in this case are substantial both in their number and in their gravity. Our careful examination of this case and those within the universe of cases that have gone to a death penalty determination since the 1991 amendment to the capital punishment statute reveals that Steckel, like others sentenced to death in Delaware, committed an unprovoked, premeditated, planned and intentional murder of a defenseless victim in her own home. *See Clark v. State,* Del.Supr., 672 A.2d 1004, 1007, 1011 (1996); *Weeks v. State,* Del.Supr., 653 A.2d 266, 274 (1995); *Lawrie,*

---

14. The "universe" of cases is comprised of those first degree murder cases that have included a penalty hearing and in which the sentence has become final, either without or following review by this Court. *Ferguson,* 642 A.2d at 789. A list of such cases appears as Appendix to this opinion.

643 A.2d at 1351; *Gattis v. State,* Del.Supr., 637 A.2d 808, 823, *cert. denied,* 513 U.S. 843, 115 S.Ct. 132, 130 L.Ed.2d 75 (1994). The imposition of the death penalty upon Steckel is proportionate to sentences imposed in other first degree murder cases that have resulted in the death sentence. We, therefore, conclude that Steckel's sentence of death for the brutal slaying of Sandra Lee Long was proportionate when compared with the sentences imposed in Delaware's universe of cases.

### IV.

This Court has carefully reviewed the entire record and has considered and rejected all claims of error raised by Steckel in this appeal. Accordingly, the underlying convictions and judgments, including the judgments imposing sentences of death for each count of Murder in the First Degree, are AFFIRMED.

The matter is remanded to the Superior Court for further proceedings consistent with this opinion and the setting of a new date of execution. *See* Super.Ct.Crim.R. 61(*l*). This Court's order of January 15, 1997, staying the execution of Steckel's death sentence, shall terminate upon the issuance of this Court's mandate. The Clerk of this Court is directed to cause a copy of this opinion to be hand-delivered forthwith to the attorneys for the parties and to the Commissioner of the Department of Correction.

### APPENDIX
### CASES DECIDED UNDER 11 *Del. C.* § 4209
### As Amended in 1991 by
### 68 Del.Laws Ch. 189*

| | |
|---|---|
| Case Name: | Meri–Ya C. Baker |
| Case Number: | IN90–12–1038 thru 1040 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | No. 360, 1992, 1993 WL 557951, Holland, J. (Dec. 30, 1993)(ORDER) |

| | |
|---|---|
| Case Name: | Jermaine Barnett |
| Case Number: | IN97–02–1238, 1131, 1334 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | Automatic and direct appeals pending |

| | |
|---|---|
| Case Name: | Hector S. Barrow |
| Case Number: | IN97–02–1353, 1356, 1359 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | Automatic and direct appeals pending |

| | |
|---|---|
| Case Name: | James B. Clark, Jr. |
| Case Number: | IN94–06–0543 through 0548 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | 672 A.2d 1004 (1996) |

| | |
|---|---|
| Case Name: | Charles M. Cohen |
| Case Number: | IN90–02–0474 thru 0477 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | No direct appeal taken |

| | |
|---|---|
| Case Name: | James T. Crowe |
| Case Number: | IN95–12–1167 thru 1169 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | Direct appeal pending |

* The universe of cases prior to 1991 is set forth in prior opinions by this Court, and those appendices are incorporated herein by reference. *See, e.g., Lawrie v. State,* Del.Supr., 643 A.2d 1336, 1352–56 (1994).

| | |
|---|---|
| Case Name: | David F. Dawson |
| Case Number: | IK86–12–0024; IK87–01–0834 thru 0847 |
| County: | New Castle (venue changed) |
| Sentence: | Death |
| Decision on Appeal: | 637 A.2d 57 (1994) |

| | |
|---|---|
| Case Name: | Byron S. Dickerson |
| Case Number: | IN90–12–1041, 1042 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | No. 353, 1992, 1993 WL 541913, Veasey, C.J. (Dec. 21, 1993) (ORDER) |

| | |
|---|---|
| Case Name: | Cornelius E. Ferguson |
| Case Number: | IN91–10–0576, 0578 thru 0581 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | 642 A.2d 772 (1994) |

| | |
|---|---|
| Case Name: | Robert A. Gattis |
| Case Number: | IN90–05–1017 thru 1019, 1106, 1107 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | 637 A.2d 808 (1994) |

| | |
|---|---|
| Case Name: | Arthur Govan |
| Case Number: | IN92–10–1586 thru 1596 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | No. 363, 1993, 1995 WL 48359, Walsh, J. (Jan. 30, 1995) (ORDER) |

| | |
|---|---|
| Case Name: | Robert W. Jackson, III |
| Case Number: | IN–92–04–1222 thru 1227; IN92–04–1348 and 1349 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | 684 A.2d 745 (1996) |

| | |
|---|---|
| Case Name: | Mark Anthony Kirk |
| Case Number: | IN96–12–0754 and 0755, IN97–01–1773 thru 1776, IN96–12–0556 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | Direct appeal pending |

| | |
|---|---|
| Case Name: | David J. Lawrie |
| Case Number: | IK92–08–0179 thru 0185; IK92–09–0148 and 0149 |
| County: | Kent |
| Sentence: | Death |
| Decision on Appeal: | 643 A.2d 1336 (1994) |

| | |
|---|---|
| Case Name: | Thomas M. Magner |
| Case Number: | IN96–01–0258 and 0259, IN96–01–1421 thru 1425 |
| County: | New Castle |
| Sentence: | Life Imprisonment |
| Decision on Appeal: | Direct appeal pending |

| | |
|---|---|
| Case Name: | Michael R. Manley |
| Case Number: | IN95–11–1323 thru 1325, IN95–12–0684 thru 0686 |
| County: | New Castle |
| Sentence: | Death |
| Decision on Appeal: | 709 A.2d 643 (1998) |

Case Name: Frank W. Moore, Jr.
Case Number: IS92–09–0001, 0002, 3001
County: Sussex
Sentence: Life Imprisonment
Decision on Appeal: No. 214, 1993, 1994 WL 202289, Holland, J. (May 9, 1994) (ORDER)

Case Name: Jack F. Outten
Case Number: IN92–01–1144 and 1145
County: New Castle
Sentence: Death
Decision on Appeal: 650 A.2d 1291 (1994)

Case Name: James W. Perez
Case Number: IN93–12–1191 thru 1202
County: New Castle
Sentence: Life Imprisonment
Decision on Appeal: No. 207, 1993, Moore, J. (Feb. 3, 1994) (ORDER)

Case Name: James Allen Red Dog
Case Number: IN91–02–1495 thru 1503
County: New Castle
Sentence: Death
Decision on Appeal: 616 A.2d 298 (1992)

Case Name: Jose Rodriguez
Case Number: IN93–02–1208, 1209, and 1211 thru 1219
County: New Castle
Sentence: Life Imprisonment
Decision on Appeal: No. 466, 1993, 1994 WL 679731, Walsh, J. (Nov. 29, 1994) (ORDER)

Case Name: Nelson W. Shelton
Case Number: IN92–01–1154 and 1155
County: New Castle
Sentence: Death
Decision on Appeal: 652 A.2d 1 (1995)

Case Name: Steven W. Shelton
Case Number: IN92–01–1149 and 1150
County: New Castle
Sentence: Death
Decision on Appeal: 650 A.2d 1291 (1994)

Case Name: Donald J. Simmons
Case Number: IN92–01–0770 thru 0772; IN92–01–1140 and 1141
County: New Castle
Sentence: Life Imprisonment
Decision on Appeal: No direct appeal taken

Case Name: Brian David Steckel
Case Number: IN96–06–1761 and 1762, IN96–06–1765 thru 1767, IN96–06–1773
County: New Castle
Sentence: Death
Decision on Appeal: 711 A.2d 5 (1998)

Case Name: David D. Stevenson
Case Number: IN95–12–0687 thru 0689, IN95–11–1047 thru 1049
County: New Castle
Sentence: Death
Decision on Appeal: 709 A.2d 619 (1998)

Case Name: Willie G. Sullivan
Case Number: IK92–01–0192 thru 0196; IK92–02–0001; IK92–03–0022
County: Kent
Sentence: Death
Decision on Appeal: 636 A.2d 931 (1994)

Case Name: Antonio L. Taylor
Case Number: IK94–06–0047 through 0052
County: Kent
Sentence: Life Imprisonment
Decision on Appeal: 685 A.2d 349 (1996)

Case Name: Charles H. Trowbridge
Case Number: IK91–07–0175, IK–91–06–0032 thru 0034
County: Kent
Sentence: Life Imprisonment
Decision on Appeal: No. 234, 1995, 1996 WL 145788, Veasey, C.J. (Mar. 4, 1996) (ORDER)

Case Name: John E. Watson
Case Number: IN91–09–0020 thru 0025
County: New Castle
Sentence: Life Imprisonment
Decision on Appeal: No direct appeal taken

Case Name: Dwayne Weeks
Case Number: IN92–10–1605 and 1611
County: New Castle
Sentence: Death
Decision on Appeal: 653 A.2d 266 (1995)

Case Name: Roy R. Williamson
Case Number: S93–05–0249 thru 0255 and S93–05–1249 and 2249
County: Sussex
Sentence: Life Imprisonment
Decision on Appeal: 669 A.2d 95 (1995)

Case Name: Jermaine M. Wright
Case Number: IN91–04–1947, 1948, and 1950 thru 1953
County: New Castle
Sentence: Death
Decision on Appeal: 671 A.2d 1353 (1996)

Case Name: Craig A. Zebroski
Case Number: IN96–09–1816 thru 1822
County: New Castle
Sentence: Death
Decision on Appeal: Automatic and direct appeals pending