# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
                    )
     V.             )     ID NO.: 1909003282
                    )
DEJOYNAY FERGUSON,     )
                    )
     Defendant.     )

Submitted: November 30, 2020
Decided:  February 26, 2021

## MEMORANDUM OPINION

*Defendant's Motion to Suppress.*
**DENIED.**

James J. Kriner, Esquire and Diana A. Dunn, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware. Attorneys for the State of Delaware.

Andrew J. Meyer, Esquire and Alanna R. Farber, Esquire, OFFICE OF DEFENSE SERVICES, Wilmington, Delaware. Attorneys for Defendant.

**BUTLER, R.J.**

The Court is here called on to enter a ruling with respect to a statement made by the defendant while in police custody. For the following reasons, the Court will deny Defendant's motion to suppress the statement.

## FACTS AND HISTORY

Defendant was an employee of Little People Child Development Center on Wrangle Hill Rd. near Bear, DE. She was assigned to the Infant Room. On Sept. 5, 2019, an infant at the Center died and Defendant became the suspect of the homicide of the infant. The suspicions were founded, at least in part, on a video monitoring system in the Infant Room that captured what the State alleges was the Defendant's suffocation of the infant.

The focus of the instant motion concerns a statement made by the Defendant when she was brought to the State Police Troop 2. The Statement was video and audio recorded and copies have been provided to the Court. The parties are in agreement that the recorded questions and answers are a sufficient basis upon which the Court can render an opinion on the motion.

In addition to the recorded statement and transcript, the Court has considered the briefs of the parties. The defense argues that the Defendant made an invocation of her *Miranda* rights and that the subsequent statement should be suppressed as a post-invocation statement prohibited by *Edwards v. Alabama*. The State argues that Defendant made what was at most an ambiguous invocation of her *Miranda* rights

1

and when the police clarified whether she was invoking her right to counsel, the Defendant knowingly and intelligently waived her rights.

## ANALYSIS

The transcript of the interview tells the story of Defendant's ambiguous invocation of her right to counsel. After being advised of her Miranda rights, the following exchange took place:

Detective: And having these rights in mind, do you wish to answer our questions?
Defendant: Um. Am I able to get an attorney?
Detective: Um. Well, that, it's – it's up to you. That's really your call. I mean just – just know your rights, you know.
Defendant: Yeah.
Detective: We're not going to bring an attorney in here.
Defendant: I know that.
Detective: We're not gonna bring an attorney in here.
Defendant: I know that.
Detective: We – we just won't talk to you.
Defendant: Yeah, um. I'll answer questions then (inaudible).
Detective: You say you will?
Defendant: All right.
Detective: Okay.
Defendant: Okay.
Detective: (inaudible)
Detective: ah. I'm sorry?
Defendant: I was gonna say and I do understand my rights that have been read to me.
Detective: Okay. And just to clarify, you wanna answer – you wanna [Defendant nods affirmatively]. Okay. And can you spell your first and last name?

Defendant's query "Am I able to get an attorney?" might be seen as an invocation of the right to counsel. The detective's response was neither positive nor

negative but rather placed the onus back on the Defendant. After explaining that if she did so, "we just won't talk to you," the Defendant said, "I'll answer questions then," clearly having resolved her dilemma with the decision to speak without counsel present.

The parties direct the Court to *Crawford v. State*,[1] a case in which the Delaware Supreme Court traced the lineage of the right to counsel in custodial interrogations from *Miranda v. Arizona*[2] (establishing the right) to *Edwards v. Arizona*[3] (requiring that police cease further questioning in the face of an explicit invocation of the right) to *Smith v. Illinois*[4] (announcing a two-step inquiry for whether a statement may survive admissibility after an invocation). The *Crawford* Court adopted the "clarification approach" to an ambiguous invocation of the right to counsel: after the subject makes an ambiguous reference to the right to counsel, further questioning must be limited to clarifying the reference.[5]

*Crawford* was a case in which these principles can be seen at work. Crawford's ex-girlfriend had been found dead and he knew police were seeking him for questioning. In a phone call with the police, he asked if he needed an attorney and, much like our defendant here, the police told him that was his decision. After

---

[1] 580 A.2d 571, 573-74 (Del. 1990).
[2] 384 U.S. 436, 478-79 (1966).
[3] 451 U.S. 477, 484-85 (1981)
[4] 469 U.S. 91, 95 (1984).
[5] *Crawford v. State*, 580 A.2d at 575-76.

visiting with two attorneys, he was on his way to a third consultation when he was picked up by police, who had search warrants for hair samples and fingernail scrapings. When interviewed back at the station, he waived his right to counsel and made statements the State sought to introduce against him. The Supreme Court affirmed the trial court's denial of Crawford's motion to suppress. It is noteworthy that whatever internal questions Crawford had about consulting a lawyer before entering the police station, he did not express them in the face of *Miranda* warnings administered before questioning.

We have other iterations of the rule in play in Delaware case law. In *Restrepo-Duque v. State*, the defendant said "I don't know. What would be better? If I talk to a lawyer?"[6] The police responded that it was up to him, but then added that "it would be nice to get your ahh side of the story out…"[7] The Supreme Court said that while the officer's further comment about getting the suspect's story out was "troublesome," under the "totality of the circumstances," it did not exceed the bounds of permitted clarification.[8]

In *Demby v. State*,[9] the defendant made some confusing references to seeking counsel in the hours before he was arrested. The attempts at clarifying what he

---

[6] 2015 WL 9268145, at *2 (Del. Dec. 17, 2015) (TABLE).
[7] *Id.*
[8] *Id.* at *5.
[9] 1995 WL 717619, at *2 (Del. Super. Nov. 28, 1995).

meant yielded a statement that "that's why I want him [an attorney] here so, you know, give him, ask him real quick questions and you can take it from there."[10] Nonetheless, in seeking further clarification, the defendant said he knew "I have the right not to say anything" at which point he proceeded to say things.[11] The Superior Court found that from all the circumstances, the defendant had not been interrogated in violation of his right to seek counsel.

Perhaps epitomizing the opposite end of the spectrum is *State v. Phillips*,[12] a Superior Court decision in which police were investigating a child death and interviewed the child's father twice at the police station. During an interview, the defendant was asked to participate in a polygraph exam. He responded that "I don't know. I still might – I still might have to get a lawyer if I have to say yes or no."[13] The officer assured him that the polygraph results would not be admissible in court. Several minutes later, defendant was advised of his right to stop answering questions and he said "I need – I need to call my family. I need to call my uncle that maybe refer me a lawyer. I need to call somebody."[14] The officer changed the subject. Again, later, defendant asked to see pictures of his deceased daughter and the detective, perhaps growing impatient, said "Are we going to keep discussing this or

---

[10] *Id.* at *3.
[11] *Id.*
[12] 2004 WL 2521816, at *1 (Del. Super. Oct. 22, 2004).
[13] *Id.* at *2.
[14] *Id.*

are you going to get a lawyer or what's the deal?" to which the defendant replied "Yeah, I'm going to get a lawyer because…" and the detective responded that "basically then this is going to be a waste of my time."[15] Finally, over 30 minutes after first raising the prospect of a lawyer, the defendant made an unequivocal request for counsel.

The Court found the interview failing under the *Crawford* criteria. The Court said, "Instead of this required clarification, the officer tried to dissuade Phillips from seeking counsel by offering him legal advice, i.e. that polygraph tests are not admissible evidence and thus could not be used against him in the event of a trial."[16] It is also informative that the Court did not rest on the first arguably ambiguous invocation in ruling in favor of suppression, but rather considered the multiple ambiguous invocations as indicative that the detective's failure to stop the questioning and clarify the defendant's wishes was intentional or at least reckless disregard of defendant's right to counsel.

So informed by the cases of the parameters of our inquiry, we turn back to case at hand. Here, unlike *Phillips*, there was but one mention of the right to counsel, at the outset of the interview. When the defendant said, "am I able to get an

---

[15] *Id.*

[16] *Id.* at *4.

attorney?" the detective's response was consistent with *Crawford* and *Restrepo-Duque* that it was up to her.

When the detective next said, "we are not going to bring one in here" but if she wishes an attorney "we just won't talk to you," these may not have been the best responses. On one hand they may fall into the category of "legal advice" eschewed by the Court in *Phillips*. On the other hand, they may have been simple statements of fact, devoid of an intent to direct Ms. Ferguson in any particular direction. Had the discussion of the consequences of invoking the right to counsel continued further, there is a danger of straying from the *Crawford* duty to limit further questioning to seeking clarification whether defendant wanted a lawyer. But the discussion did not continue, it ended there.

The Court's job is to consider the totality of the circumstances, including the rest of the interview, to determine whether the statement was obtained despite defendant's asserted right to counsel. Here, there was certainly no unequivocal assertion of the right to counsel, even though the right was concededly spelled out to the defendant at the outset when she was *Mirandized*. The detective's statement that they would not procure counsel to bring into the room with them but instead would simply stop talking with her was not directive or threatening or coercive, in tone or effect.

The Courts have not, so far as can be determined, prescribed a specific script to be followed when a suspect makes an ambiguous request for counsel. But the detectives' response that the decision was Defendant's to make has been upheld in the appellate courts. The further comment that the questioning would cease was little more than a statement of fact and the Court does not conclude that it was intended to overcome Defendant's choice to request counsel. The defendant's somewhat wistful question whether she could have an attorney at some vague, ill-defined point was at most ambiguous and her election to proceed with a statement cannot be seen as an invocation of her right to counsel. The Court does not find that the detective's "clarifying" questions were intended to undermine her rights. The Court therefore denies Defendant's motion to suppress her statements to the police.

## CONCLUSION

The Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

Charles E. Butler, Resident Judge

8