# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VERNON D. CEPHAS, | § | |
| | § | |
| Defendant Below, | § | No. 305, 2021 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1503005476 (K) |
| | § | |
| Appellee. | § | |

Submitted: March 7, 2022
Decided: May 17, 2022

Before **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1)    In 2015, the appellant, Vernon D. Cephas, was arrested for having allegedly committed sexual offenses against his girlfriend's then-seven-year-old niece. Following a four-day trial in September 2016, a jury found Cephas guilty of four counts of first-degree unlawful sexual contact (as lesser-included offenses of first-degree rape charges), three counts of second-degree rape, continuous sexual abuse of a child under the age of thirteen, and sexual solicitation of a child. The

Superior Court sentenced Cephas to a total of 157 years of imprisonment, suspended after 79 years, 75 of which were imposed as a minimum-mandatory sentence.

(2)     The record reflects that, near the end of February 2015, the child told her mother that Cephas had been molesting her.  The child's mother reported the alleged abuse to the child's pediatrician on March 3, 2015.  The pediatrician referred the child and her mother to the hospital, where the child was seen by a sexual assault nurse examiner.  On March 11, 2015, the child was interviewed by a forensic interviewer at the Child Advocacy Center ("CAC").

(3)     After the CAC interview, Detective Mark Csapo of the Delaware State Police applied for, and was granted, a warrant for Cephas's arrest.  Later that day, the police arrested Cephas at his home.  After the police loudly knocked on the front and back doors of the residence and received no response, a juvenile male approached the police, told them that he lived there and that Cephas was inside, and allowed the officers into the home.  When entering the residence, the police announced their presence several times but received no response.  They found Cephas standing in a bedroom closet that was partially closed.

(4)     After placing Cephas under arrest, the police transported him to State Police Troop 3.  After receiving *Miranda*[1] warnings from Detective Csapo, Cephas indicated that he wanted to answer the detective's questions.  During the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

interrogation that followed, Cephas denied some of the accusations, but admitted others.

(5) In July 2016, Cephas's trial counsel filed a motion to suppress Cephas's statement on the ground that Cephas's waiver of his *Miranda* rights was involuntary. The Superior Court held an evidentiary hearing in early August and issued an order denying the motion to suppress.[2] On the first day of trial in September 2016, trial counsel orally moved to reopen the suppression motion to present two grounds for suppression that were not previously raised. The first additional ground for suppression was that there were possible defects in the timing of the arrest warrant that could render the arrest illegal.[3] The second additional ground for suppression was that Cephas had ambiguously invoked his right to remain silent during the interrogation by stating, "I'm done with this" and then remaining quiet for several minutes.[4] The Superior Court denied the motion to reopen after finding no extraordinary circumstances or good cause to consider grounds for suppression that defense counsel could have raised in the motion to suppress or at the evidentiary hearing.

---

[2] *State v. Cephas*, 2016 WL 4409550 (Del. Super. Ct. Aug. 16, 2016).

[3] App. to Opening Br. at A307–08.

[4] *Id.* at A308-09. The actual statement—and the statement on which Cephas has relied in the postconviction proceedings—was, "I can't even do this no more." *Id.* at A120. *See also State v. Cephas*, 2020 WL 7351257, at *4 (Del. Super. Ct. Dec. 14, 2020) (Commissioner's report) (addressing ambiguous-invocation issue).

(6)     This Court affirmed on direct appeal.[5]  Cephas filed a timely *pro se* motion for postconviction relief, and the Superior Court granted his motion to appoint counsel.  After the completion of briefing, a Superior Court Commissioner issued a report recommending denial of the motion for postconviction relief.  After considering Cephas's exceptions to the Commissioner's report, the Superior Court denied the motion for postconviction relief.  Cephas has appealed to this Court.

(7)     On appeal, Cephas's counsel[6] has filed a brief and motion to withdraw under Supreme Court Rule 26(c).  Counsel asserts that, based upon a conscientious review of the record and the law, no arguably appealable issues exist.  Counsel informed Cephas of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw and the accompanying brief.  Counsel also informed Cephas of his right to supplement counsel's brief by stating in writing any points he would like the Court to consider.  Cephas has raised several points for the Court's consideration.  The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

(8)     Our review in this appeal is twofold:  (i) the Court must be satisfied that postconviction counsel has made a conscientious examination of the record and the

---

[5] *Cephas v. State*, 2017 WL 3048466 (Del. July 18, 2017).
[6] Different counsel represents Cephas in this appeal than represented him in the postconviction proceedings in the Superior Court.

4

law for arguable claims;[7] and (ii) the Court must conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[8]

(9) Cephas argues that his trial counsel provided ineffective assistance by (i) not timely filing a motion to suppress based on alleged defects in the timing of the arrest warrant; (ii) not timely filing a motion to suppress Cephas's partial confession based on a claim that Cephas ambiguously invoked his right to remain silent; (iii) failing to communicate a plea offer; (iv) failing to object to certain testimony; and (v) failing to object to, or to request a curative instruction regarding, certain statements by the prosecutor. The Court considers the procedural requirements of Rule 61 before addressing any substantive issues,[9] but claims of ineffective assistance of counsel generally are not procedurally barred by Rule 61.[10]

(10) To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) defense counsel's performance fell below an objective standard of reasonableness; and (ii) there is a reasonable probability that but for the

---

[7] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[8] *Penson*, 488 U.S. at 81.

[9] *Bradley v. State*, 135 A.3d 748, 756-57 (Del. 2016).

[10] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020) ("[I]neffective-assistance claims are not subject to Rule 61(i)(3)'s bar because they cannot be asserted in the proceedings leading to the judgment of conviction under the Superior Court's rules and this Court's precedent.").

deficient performance the result of the proceeding would have been different.[11]  The appellant must state and substantiate concrete allegations of actual prejudice.[12]  The appellant must also overcome a strong presumption that counsel's performance was professionally reasonable.[13]

(11)  First, Cephas argues that his trial counsel was ineffective because she did not timely file a motion to suppress based on a claim that the magistrate that authorized the arrest warrant did so without receiving an oath or affirmation from Detective Csapo and that the officers entered Cephas's home to arrest him before receiving the warrant.  This argument is based on alleged discrepancies between the time at which the arrest warrant shows that it was approved and Detective Csapo's testimony during the suppression hearing regarding when he left Police Troop 3 to drive to Cephas's home to conduct the arrest.

(12)  The arrest warrant indicates that it was approved at 2:32 p.m. on March 11, 2015.[14]  During direct examination at the suppression hearing, Detective Csapo stated, "I believe the time [that I obtained the arrest warrant] was between maybe one and two in the afternoon,"[15] and that he made contact with Cephas *after*

---

[11] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[12] *Peters v. State*, 2015 WL 1280628, at *2 (Del. Mar. 20, 2015) (*citing Younger v. State*, 580 A.2d 552, 556 (Del. 1990)).

[13] *Id.*; *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[14] App. to Opening Br. at A23.

[15] *Id.* at A195.

receiving the arrest warrant.[16] During cross-examination, Detective Csapo stated that the arresting officers "arrived on scene at approximately 2:30 p.m.,"[17] and that the officers set up a perimeter around the house between their "arrival [at Cephas's address] at 2:30 and then my contact with Mr. Cephas at 3:15 inside the interview room at Troop 3."[18] During cross-examination at trial, Detective Csapo testified that he was video sworn before a magistrate at Court 2 while Detective Csapo was at Troop 3, that he received verbal approval of the warrant before disconnecting from the video call and received the hard copy of the warrant at "approximately 2:30-ish," and that he had the hard copy before leaving for Cephas's residence.[19]

(13) Cephas has established neither deficient performance nor prejudice as to this issue. As the Superior Court Commissioner determined, in his testimony at both the suppression hearing and trial, Detective Csapo approximated the time at which he received the arrest warrant but was clear that he had the warrant before making contact with Cephas. He also testified that he was video sworn before the magistrate that issued the warrant while he was still at the police troop. This claim is without merit.

---

[16] *Id.* at 196. *See also id.* at A225–26 (stating that the officers went to Cephas's address "based on having that [arrest] warrant").

[17] *Id.* at A224.

[18] *Id.* at A225.

[19] *Id.* at A534–36.

7

(14)   Second, Cephas asserts that his trial counsel was ineffective because she did not timely seek to suppress Cephas's partial confession based on a claim that Cephas ambiguously invoked his right to remain silent during his interrogation by Detective Csapo when he said "I can't even do this no more" and then stopped talking for several minutes.[20]   The Superior Court found that trial counsel evaluated Cephas's desire to seek suppression on this basis but did not believe that the claim was meritorious.[21]   The court agreed with trial counsel's analysis and concluded that, examining "the entire context of the conversation" and "'analyzing the totality of the circumstances,'" "Cephas did not invoke *Miranda*" and therefore "[t]here was no need for a suppression motion" based on the ambiguous invocation issue.[22]

(15)   We conclude that Cephas has not sufficiently demonstrated either that counsel's performance fell below an objective standard of reasonableness or prejudice as to this issue.   After Cephas said, "I can't even do this no more," Detective Csapo said: "You need to get help for what you're doing, for what you've done.  You know that.  You know that without a doubt.  And, you can't argue with me when I say that, because you know.  You need to get help.  It's going to continue.

---

[20] App. to Opening Br. at A120.

[21] *State v. Cephas*, 2020 WL 7351257, at *4 (Del. Super. Ct. Dec. 14, 2020) (Commissioner's report).

[22] *Id.* at *5.  *See also State v. Cephas*, 2021 WL 3141194, at *2 (Del. Super. Ct. July 26, 2021) (conducting *de novo* review of Commissioner's report and affirming "for the reasons discussed in the Commissioner's Report").

This is the first step in that process."[23] Before Cephas spoke again, Detective Csapo also said, "You got to empty out your closet" and asked two questions about when Cephas last had contact with the child.[24] Considering the totality of the circumstances,[25] we find no basis for reversal. Even if Cephas's statement constituted an ambiguous invocation, Detective Csapo's response did not "coerce or intimidate" Cephas or discourage him from obtaining counsel.[26]

(16) Third, Cephas contends that his trial counsel failed to communicate a plea offer. At a plea colloquy on November 13, 2015, Cephas rejected an offer to plead guilty to one count of second-degree rape and one count of sexual solicitation of a child, with a recommended sentence of ten years of unsuspended time.[27] The following day, the case was on the trial calendar. At the call of the calendar, the prosecutor stated that, at defense counsel's request, the State had made another plea offer, encompassing the same charges as the plea offer discussed the previous day but increasing the sentencing recommendation to include an additional year of

---

[23] App. to Opening Br. at A120.

[24] *Id.*

[25] *See Crawford v. State*, 580 A.2d 571, 575 (Del. 1990) ("The threshold standard looks to the totality of the circumstances surrounding the ambiguous invocation in a search for intent with a heavy burden of clarity upon the defendant.").

[26] *See Restrepo-Duque v. State*, 2015 WL 9268145, at *4-5 (Del. Dec. 17, 2015) (affirming Superior Court's decision not to suppress defendant's statement to police where defendant responded to police request to make a statement by saying, "'I don't know. What would be better? If I talk to a lawyer,'" and detective responded, "I mean it's up to you I mean, it's perfectly up to you I mean. It [would] be nice to get your ahh side of the story out because if you don't get your side of the story out we got to go with . . . you know what I'm saying'"").

[27] Appendix to Opening Brief at A35–42.

unsuspended time, yet Cephas had rejected the offer.[28] The court did not conduct a formal colloquy on that offer, because the discussion turned to Cephas's request for a continuance to retain private counsel. After discussing that request with Cephas and his counsel and Cephas's waiver of his speedy-trial rights, the court granted the request.[29]

(17) The record reflects that the State made a third plea offer in June 2016 under which Cephas would have pleaded guilty to either first- or second-degree rape, with a recommended minimum mandatory sentence of twenty-five years of incarceration.[30] The parties dispute whether trial counsel communicated that offer to Cephas and, therefore, whether he rejected that offer in June 2016. Because there was no colloquy in June 2016, the Superior Court conducted a colloquy with Cephas on September 6, 2016. The court asked whether Cephas would accept a plea with a twenty-five-year recommended sentence, and Cephas unequivocally said that he would not.[31] Whether or not trial counsel communicated the June 2016 plea offer to Cephas, he has not established prejudice because he stated at the September 2016 colloquy that he would not take a twenty-five-year plea.[32]

---

[28] *Id.* at A45.

[29] *Id.* at A46–52.

[30] *Id.* at A290.

[31] *Id.* at A293–95.

[32] *Cf. Richardson v. State*, 3 A.3d 233, 241 (Del. 2010) (affirming Superior Court's conclusion that defendant did not establish prejudice from his counsel's alleged failure to communicate a plea

(18)  Fourth, Cephas asserts that his counsel provided ineffective assistance because she did not object to certain testimony.  Specifically, Cephas argues that trial counsel should have (i) used the child's statement at the CAC interview that the alleged abuse had been occurring since January 2015 (approximately a one or two month period) to undermine the testimony of the child's pediatrician that the child told him that the alleged abuse had been occurring for a year; (ii) objected to a statement by the forensic nurse examiner that she obtained information regarding the allegations from the child's mother rather than the child because the child was "so young, and there was a high likelihood that she would get a CAC interview, which is a forensic interview where kids are spoken to by professionals whose only job it is to talk to kids and kind of find out the truth";[33] and (iii) objected to Detective Csapo's statement that "it's very uncommon" "for a suspect to come in and right away tell [him] the information he want[s]."[34]

(19)  None of these claims warrants postconviction relief.  In her affidavit in response to the motion for postconviction relief, trial counsel explained the various factors that affected her decisions, in the exercise of her professional judgment, about how to respond to the challenged testimony.  Cephas's claims do not overcome

---

offer, because the defendant did not claim that he would have accepted the offer if he had known about it).

[33] App. to Opening Br. at A456–57.

[34] *Id.* at A528.

11

the strong presumption that counsel's performance was professionally reasonable and consistent with "sound trial strategy."[35] As to the claim regarding the duration of the abuse, the facts that the child estimated that the abuse had occurred over a period of approximately a year when speaking with the pediatrician and estimated that it had occurred only since January 2015 during her interview at the CAC were both presented to the jury. As to the forensic nurse examiner's statement, the nurse's statement did not opine on whether the child's statements at the CAC interview were the truth—indeed, the nurse clearly stated that the interview had not even occurred at the time that she examined the child. Finally, Detective Csapo's statement also did not opine on the truth of Cephas's statement, but rather referred to suspects' typical reluctance to make statements that the detective "wants" them to make. Cephas has not established that counsel's performance was deficient as to these claims.

(20) Finally, Cephas argues that his counsel was ineffective because she failed to object to, or request a curative instruction regarding, certain statements by the prosecutor. He asserts that trial counsel should have objected to (i) a statement by the prosecutor during closing argument that Cephas admitted to penetrating the child's vagina; (ii) the prosecutor's suggestion during closing argument that the jury could infer guilt from Cephas's silence when the child's mother confronted him with

---

[35] *Strickland*, 466 U.S. at 689.

the accusations shortly after the child reported the alleged abuse; and (iii) purported vouching by the prosecutor when she stated during closing argument that the victim's testimony supported an inference that she actually felt the alleged abuse. It does not appear that Cephas raised these arguments in the postconviction proceedings in the Superior Court. Absent plain error, which we do not find here, we will not consider arguments raised for the first time on appeal.[36] "This general rule is particularly appropriate in the context of ineffective-assistance-of-counsel claims because trial counsel was not afforded the opportunity to respond to the claims in the first instance."[37]

(21) This Court has carefully reviewed the record and concluded that Cephas's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that counsel made a conscientious effort to examine the record and the law and properly determined that Cephas could not raise a meritorious claim on appeal.

---

[36] DEL. SUPR. CT. R. 8.
[37] *Palmer v. State*, 2022 WL 871024, at *2 n.8 (Del. Mar. 23, 2022).

13

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice