# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
v. ) ID No. 2302005204
)
NASIR ANDERSON, )
)
Defendant. )

Submitted: January 31, 2024
Decided: April 5, 2024

## **OPINION**

*Defendant's Motion to Suppress:*
**DENIED.**

John Downs, Esquire, and Ipek Kurul, Esquire (Argued), Deputy Attorneys General, Department of Justice, Wilmington, Delaware, *Attorneys for the State*.

Peter W. Veith, Esquire (Argued), Wilmington, Delaware, *Attorney for Defendant*.

**Adams, J.**

**INTRODUCTION**

On February 25, 2018, Charles Young (the "Victim") was shot and killed after two individuals unlawfully entered his home. The State alleges that Defendant Nasir Anderson ("Defendant") committed these acts alongside his now-deceased cousin, Rashaad Wisher. On February 13, 2023, a Superior Court grand jury indicted Defendant on nine counts, including Murder in the First Degree. On February 14, 2023, Wilmington Police Department arrested Defendant pursuant to a warrant issued under Superior Court Criminal Rule 9. The issue before this Court is Defendant's Motion to Suppress Defendant's statements made to police after his arrest. For the following reasons, the Court denies Defendant's Motion to Suppress.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts relevant to this motion are largely uncontested. The Wilmington Police Department ("WPD") interviewed Defendant on three occasions regarding the murder of the Victim.[2] The first interview occurred on June 15, 2018.[3] After Detective Quinn from WPD read Defendant his *Miranda* rights, Defendant invoked his right to silence and right to counsel, and the interview ended.[4] The first interview is not at issue in this motion.[5]

---

[1] A ten-day jury trial is set to begin in this matter on May 6, 2024.
[2] Defendant's Motion to Suppress Defendant's Statements to the Police at 1 [hereinafter "Def.'s Mot."].
[3] *Id.*
[4] *Id.* at 1–2.
[5] *Id.* at 2 n.3.

The second interview was on July 10, 2018. During the July 2018 interview, Detective Ball from WPD interrogated Defendant about two unsolved murders. After Detective Ball's interrogation, Detective Quinn entered the room and interrogated Defendant about the Victim's homicide.[6] Defendant made incriminating statements about the Victim's homicide during this interview.[7] The State concedes that Defendant was not advised of his *Miranda* rights during the July 2018 interview and consequently anything said in this interview will not be admissible during the State's case-in-chief.[8] Defendant moved to suppress the statements made during the second interview, but given the State's concessions, the issue is now moot.[9]

On February 14, 2023, Defendant was interviewed for a third time by Detective Jones and Criminal Investigator Rizzo, both from WPD.[10] Detective Jones read Defendant his *Miranda* rights, and Defendant proceeded to make incriminating statements.[11] The relevant portion of the interview proceeded as follows:

---

[6] *Id.* at 2.
[7] *Id.*
[8] State's Response to Defendant's Motion to Suppress at 2 [hereinafter "State's Resp."].
[9] The Court notes that the State "reserve[d] the right to petition the Court to admit Anderson's otherwise inadmissible statements if they become relevant for impeachment purposes at trial." State's Resp. at 2. The Court will not rule on any hypothetical at this time. If the State intends to introduce any statement obtained during the interview on July 10, 2018, the Court will rule on admissibility at the appropriate time on appropriate motion.
[10] Def.'s Mot. at 2.
[11] *Id.* at 2–3.

DET. JONES: You don't want to talk?

MR. ANDERSON: No.

DET. JONES: Okay. And that's fair. Um, so you've been indicted for, uh, murder first degree.

MR. ANDERSON: Yeah.

DET. JONES: Uh, you've been indicted for some weapons offenses, uh, and some other things. I don't know right off the top of my head, but –

MR. ANDERSON: Yeah.

DET. JONES: I can tell you the big things are murder first degree, possession of a firearm, commission of a felony –

MR. ANDERSON: Yeah.

DET. JONES: -- uh, like, maybe endangering and stuff like that. So, um, you got indicted yesterday by the New Castle County grand jury.

MR. ANDERSON: Yeah.

DET. JONES: Um, so you'll be processed at some point today on that (inaudible).

MR. ANDERSON: Yeah.

DET. JONES: Okay? Um, you also – which is not really a big deal – you also got a speeding ticket.

MR. ANDERSON: Yeah.

DET. JONES: So, um, what. All right? Any questions?

MR. ANDERSON: Yeah, can I, uh, make a phone call?

DET. JONES: Yeah, you – one – once we put you downstairs, we'll process you, they'll – and you'll see the judge and they'll let you make a phone call.

MR. ANDERSON: But I ain't gonna see the judge till, like, later – later –

DET. JONES: Oh, I don't think so. I think you'll – I think they'll get you in in the next couple hours probably. I mean, we – it's just a quick paperwork. I don't know if they're gonna see you in superior court of I don't know if they're gonna see you in, like, the JP court here.

MR. ANDERSON: Yeah.

4

DET. JONES: But, um, you know, w- we'll s you should be seeing –

MR. ANDERSON: (Cross talk) what the murder indictment on?

DET. JONES: Like, I mean, if you want to talk about it, I – I can talk to you about it. But I can't (cross talk)

MR. ANDERSON: Is it the (inaudible) thing?

DET. JONES: Uh, you don't want to talk. I mean, if you want to talk, like I said, at any time we can stop talking. I can answer these questions, but I can't go back and forth with you.

MR. ANDERSON: All right. Can I ask another question then?

DET. JONES: So do you want to talk?

MR. ANDERSON: Yeah, yeah.

DET. JONES: Okay, Do – do you understand those rights that I read to you?

MR. ANDERSON: Yeah.

DET. JONES: Each and every one of them?

MR. ANDERSON: Yeah.

DET. JONES: All right. You understand you've been indicted?

MR. ANDERSON: Yeah, yeah.

DET. JONES: By the New Castle County grand jury?

MR. ANDERSON: Mm-hm.

DET. JONES: You understand that at any time you can – you don't have to talk?

MR. ANDERSON: Yeah, yeah.

DET. JONES: Okay. Cause before you didn't want to talk. Now you want to talk?

MR. ANDERSON: Yeah, cause I just want to hear what you're gonna ask me.

DET. JONES: Okay. Are you cool with talking?

MR. ANDERSON: Yeah.

DET. JONES: Okay. You understand everything?

MR. ANDERSON: Yeah.

DET. JONES: I just want to make sure, cause I don't want you to come back, (Inaudible) I didn't say that, and all that. You – you totally understand what I just read to you?

MR. ANDERSON: Yeah, I know.

DET. JONES: Okay. And you're willing to talk?
MR. ANDERSON: I know how this work.
DET. JONES: Okay.
MR. ANDERSON: (Inaudible) yeah.
DET. JONES: All right. All right. You've been indicted for a 2018 murder ---[12]

At issue is whether Defendant validly waived his Fifth and Sixth Amendment rights before speaking. The State concedes that Defendant did initially state that he did not wish to speak.[13] The State also does not dispute that Defendant was in custody and subject to custodial interrogation during the third interview.[14] Defendant argues that his statements should be suppressed because his Fifth Amendment right to silence, his Fifth Amendment right to counsel, and his Sixth Amendment right to counsel have all been violated. Defendant directs the Court to his initial assertion that he did not wish to speak, and that any subsequent waiver of his rights was not knowing or voluntary because he did not fully understand the nature of his rights, or the consequences of waiving them.[15]

---

[12] State's Resp. Ex. 2, 8:11–12:2.

[13] State's Resp. at 4. The transcript indicates the following conversation:

DET. JONES: With those rights in mind, are you willing to talk to us?
MR. ANDERSON: Un, nah.
DET. JONES: You don't want to talk?
MR. ANDERSON: No.

State's Resp. Ex. 2, 8:7–8:13. The Court has also reviewed the recording of the interview. The Court notes that portions of the transcript were provided with other briefs, but will rely on Exhibit 2 because it was the only complete transcript provided.

[14] State's Resp. at 6.

[15] Defendant's Supplemental Brief to the Motion to Suppress at 7 [hereinafter "Def.'s Supp. Br."]. Defendant originally asserted in the Motion to Suppress that the Detective's "repeatedly informing Anderson he has been indicted for murder first degree, firearm offenses, and that he was going to

6

The State argues Defendant did not invoke his right to an attorney; "[i]n fact, [Defendant] never mentioned the word lawyer or attorney or counsel during the entire interview."[16] As to the right to silence, the State argues Defendant waived his prior invocation of the right when he pursued dialogue with the police by asking questions.[17] The State further argues the officers were not coercive when they merely answered Defendant's questions, especially since they repeatedly asked Defendant if he understood the rights he was waiving.[18]

At the suppression hearing, the State called Detective Jones to testify to the context and circumstances of the third interview. The Defendant did not present any witnesses. The Court requested supplemental briefing from both parties and briefing concluded on January 31, 2024. This Opinion addresses Defendant's motion to suppress the statements made in the third interview on Fifth and Sixth Amendment grounds.

---

jail is the type of coercive questioning the court forbids" and "the continued interrogation of Anderson, after he invokes his *Miranda* right was done to coerce him into waiving his rights, so any subsequent waiver of *Miranda* by Anderson was not voluntary[.]" Def.'s Mot. at 14–15. Defendant appears to have abandoned the argument as to coercion in the supplemental briefing. In Defendant's Supplemental Brief, Defendant "concedes that the police did not engage in intimidation, coercion or deception in this matter but argues that based upon the totality of the circumstances the defendant did not fully understand the nature of the rights and the consequences of abandoning them, thus making the waiver invalid." Def.'s Supp. Br. at 7.

[16] State's Resp. at 3.

[17] *Id.* at 6.

[18] *Id.* at 8–9.

# ANALYSIS

## I.    Right to Counsel

### a. Fifth Amendment Right to Counsel

*Miranda v. Arizona* established a Fifth Amendment right to counsel during custodial interrogations.[19] *Miranda* emphasized the risk of police coercion when an accused is interrogated without the assistance of counsel.[20] *Miranda* holds that a person subject to interrogation cannot be questioned after invoking their right to counsel unless they reinitiate conversation with the police and knowingly and intelligently waive the previously invoked right to counsel.[21] The Fifth Amendment right to counsel is not offense-specific, meaning as soon as the right is invoked all questioning about any investigation must cease.[22]

In *Crawford v. State*, the Supreme Court of Delaware expanded the Fifth Amendment protections by adopting the "clarification approach."[23] If a suspect fails

---

[19] *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).

[20] *Id.* at 470.

[21] *See Brank v. State*, 528 A.2d 1185, 1187 (Del. 1987) (summarizing the right to counsel protections derived from *Edwards v. Arizona*, 451 U.S. 477 (1981) and *Smith v. Illinois*, 469 U.S. 91 (1984)). This analysis involves two steps: "First, the court must determine whether the defendant actually invoked his right to counsel. Once this determination is made, further statements by the defendant are admissible only if (a) the defendant initiated further discussion, and (b) the defendant knowingly and intelligently waived the right to have an attorney present." *Crawford v. State*, 580 A.2d 571, 574 (Del. 1990) (citing *Smith*, 469 U.S. at 95).

[22] *See Arizona v. Roberson*, 486 U.S. 675, 683 (1988) ("As a matter of law, the presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation.").

[23] *Crawford*, 580 A.2d at 576–77.

to invoke unequivocally the right to counsel, the clarification approach requires that police attempt to determine the suspect's intention before proceeding, and must do so in a way that does "not coerce or intimidate the suspect or otherwise discourage his effort to secure counsel, if that is his intention."[24] If the suspect "does not wish the assistance of counsel" after clarification, then the interrogation can continue.[25] "A mere expression that the defendant thinks he needs counsel is not an explicit invocation of the right to counsel" but an ambiguous invocation that requires clarification by the officer.[26]

Defendant here did not request an attorney, or even mention an attorney at any point throughout the interview.[27] Instead, Defendant attempts to conflate his *Miranda* right to silence with his *Miranda* right to counsel, stating that by invoking

---

[24] *Id.* at 577.

[25] *Id.* In *Crawford*, the court found that the officers made a good faith effort to understand Crawford's intentions, when he indicated he was in the process of obtaining a lawyer, but after being read his *Miranda* warnings three times, he still agreed to speak. *Id.*

[26] *State v. King*, 2021 WL 211150, at *8 (Del. Super. Jan. 21, 2021) (internal citations omitted). *See also Steckel v. State*, 711 A.2d 5, 10 (Del. 1998). In *Steckel*, while being moved from a cell to an interview room, an accused asked the officer "Should I contact a lawyer?" to which the officer stated that he could not provide legal advice, but that the accused had the right to contact an attorney. *Id.* at 10–11. The court denied the motion to suppress because it found the officer appropriately responded to the accused's question, re-read him his *Miranda* warnings, and gave him an opportunity to make phone calls wherein he called family and friends, but not an attorney. *Id.* Similarly, in *Restrepo-Duque v. State*, the Supreme Court of Delaware affirmed a defendant's rights were not violated when he asked an officer "What would be better? If I talk to a lawyer." and the officer responded "I mean it's up to you I mean, it's perfectly up to you I mean. It be nice to get your ahh side of the story out because if you don't get your side of the story out we got to go with . . . you know what I'm saying?" *Restrepo-Duque v. State*, 130 A.3d 340 (TABLE), 2015 WL 9268145, at *2 (Del. 2015). While the court acknowledged that the officer's response was not "ideal," it was still not deemed to be coercive or intimidating under the totality of the circumstances. *Id.* at *5.

[27] State's Resp. at 3.

9

unequivocally his right to silence, he also invoked his right to counsel.[28]  No such

conflation exists.  For Fifth Amendment right to counsel protections, the Defendant

must have either invoked unequivocally his right to counsel to Detective Jones, or

must have equivocally invoked it, requiring Detective Jones to further clarify

Defendant's intentions.[29]  By failing to mention the words "lawyer," "attorney,"

"counsel," or other comparable term, Defendant did not invoke his Fifth Amendment

right to counsel at all.  The Court holds Defendant's Fifth Amendment right to

counsel was not violated.

    b.  <u>Sixth Amendment Right to Counsel</u>

The Sixth Amendment, applied to the states through the Fourteenth

Amendment, provides that "[i]n all criminal prosecutions, the accused shall . . . have

the Assistance of Counsel for his defence."[30]  The Delaware Constitution states that:

> In all criminal prosecutions, the accused hath a right to be heard by
> himself or herself and his or her counsel, to be plainly and fully
> informed of the nature and cause of the accusation against him or her,
> to meet the witnesses in their examination face to face, to have
> compulsory process in due time, on application by himself or herself,
> his or her friends or counsel, for obtaining witnesses in his or her favor,
> and a speedy and public trial by an impartial jury; he or she shall not be
> compelled to give evidence against himself or herself, nor shall he or

---

[28] Def.'s Mot. at 14.

[29] At the suppression hearing, Defendant's counsel asked Detective Jones about Defendant asking to make a phone call.  The Court infers, but Defendant did not argue, that Defendant considered whether this request could imply an invocation of counsel.  Detective Jones testified that he did not ask who Defendant wanted to call because it was not his business.  The Court finds no support in case law to conflate a general question for a phone call to an even ambiguous request for counsel.

[30] U.S. Const. Amend. VI.  The Court notes the inconsistent spelling of "defence" or "defense" in case law but uses the original British spelling to ensure accuracy to the original quotation.

she be deprived of life, liberty or property, unless by the judgment of his or her peers or by the law of the land.[31]

Together, the right to counsel attaches once judicial proceedings have commenced through all "critical" stages of the criminal proceedings, "including the deliberate elicitation by law enforcement officers (and their agents) of statements pertaining to the charge[.]"[32] Judicial proceedings have "commenced" once a defendant is indicted.[33]

If a statement is obtained in violation of a defendant's Sixth Amendment right to counsel, then the statement is inadmissible in the prosecution's case-in-chief.[34] This protection is offense-specific, meaning that only the crimes for which the judicial proceedings have begun are relevant.[35] "The waiver of a Sixth Amendment right to counsel is a more difficult standard to satisfy than the waiver of a Fifth Amendment right to counsel."[36]

Unlike a Fifth Amendment waiver, which can be accomplished merely by not invoking the right,[37] the Sixth Amendment requires "some form of affirmative overt action by the defendant which indicate[s] his willingness to talk to law enforcement

---

[31] Del. Const. art. 1, § 7. *See Franco v. State*, 918 A.2d 1158, 1161 (Del. 2007) (interpreting the text to "guarantee an accused the right to confront the witnesses against him in all criminal prosecutions").

[32] *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (internal citations omitted).

[33] *See, e.g.*, *Norman v. State*, 976 A.2d 843, 857–58 (Del. 2009).

[34] *See id.*

[35] *State v. White*, 2017 WL 1842784, at *12 (Del. Super. May 8, 2017).

[36] *Turner v. State*, 957 A.2d 565, 574 (Del. 2008).

[37] *See supra* Section I. a.

officers."[38] Waiver of the Sixth Amendment right "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'"[39] While *Miranda* warnings are a factor in finding a valid waiver of the Sixth Amendment right, "this Court must consider, in addition to police warnings, the totality of the circumstances surrounding the accused's waiver."[40]

When the accused is given *Miranda* warnings, he "has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."[41] The waiver must be made knowingly, intelligently, and voluntarily.[42] "The waiver must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception . . . [and] must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"[43]

---

[38] *Turner*, 957 A.2d at 574 (quoting *Deputy v. State*, 500 A.2d 581, 591 (Del. 1985)). *See also State v. Lopez*, 2016 WL 5746372, at *3 (Del. Super. Oct. 3, 2016) ("Unlike the right-to-counsel situation discussed in *Miranda v. Arizona*, and other Fifth Amendment cases, the defendant's Sixth Amendment right to counsel is not dependent upon the defendant's request for such counsel. Instead, the latter right is activated by the initial judicial adversary proceeding and applies to any statements made by the defendant, even if unsolicited.").

[39] *Morrison v. State*, 135 A.3d 69, 73 (Del. 2016) (quoting *Edwards*, 451 U.S. at 482).

[40] *State v. Johnson*, 2005 WL 1953006, at *6 (Del. Super. June 29, 2005) (quoting *State v. Brophy*, 1986 WL 13100, at *7 (Del. Super. Sept. 12, 1986)).

[41] *Holmes v. State*, 135 A.3d 79 (TABLE), 2016 WL 1055050, at *5 (Del. 2016) (quoting *Turner*, 957 A.2d at 574).

[42] *See, e.g.*, *Morrison*, 135 A.3d at 70.

[43] *Holmes*, 2016 WL 1055050, at *4 (quoting *Hubbard v. State*, 16 A.3d 912, 917 (Del. 2011)).

The State has the burden to demonstrate a valid waiver.[44] When considering the circumstances of the waiver, the court "may consider whether the defendant: (1) Comprehended the nature of the right he forfeited; (2) Indicated, by words or conduct, an affirmative desire to relinquish the right; and (3) Voluntarily relinquished the right."[45] Several cases are instructive to the Court on what to consider for a valid waiver.

In *Turner v. State*, the Supreme Court of Delaware held that the defendant's Sixth Amendment right was not violated when he initiated conversation with police, the officers gave him *Miranda* warnings, the defendant did not request counsel, and then reaffirmed his desire to speak.[46] In reaching this conclusion, the Supreme Court noted that Turner's "ample experience in the criminal justice system" sufficiently showed that he "understood the nature of the right that he was forfeiting."[47]

In *Keis v. State*, the Court held that a defendant's rights were not violated when he was properly read his *Miranda* rights, signed a *Miranda* waiver, talked without being coerced, and "had also been exposed to the criminal justice system

---

[44] *Johnson*, 2005 WL 1953066, at *5 (internal citations omitted).

[45] *Id.* (quoting *Deputy*, 500 A.2d at 591).

[46] *Turner*, 957 A.2d at 574.

[47] *Id.* Similarly, in *State v. Johnson*, the defendant was 47, had an eleventh-grade education, was capable of basic reading and writing, and had been read his *Miranda* rights three times during prior criminal investigations. *Johnson*, 2005 WL 1953066, at *6–7. The court noted that these "prior encounters with the criminal justice system indicate that he fully understood that he had a right to counsel." *Id.* at *7. There was also no evidence that the police made threats or promises to coerce the defendant into talking, instead he "did not hesitate to orally waive his rights" and "appeared eager to talk." *Id.* at *8.

multiple times in his past and was aware of the dangers of speaking to detectives."[48] The defendant's claim that he only spoke to "better understand the charges against him" failed "because his explanation [did] not implicate coercive questioning by the Detectives" nor were the detectives' actions physically or psychologically coercive.[49]

In this case, the State agrees that Defendant is entitled to the more stringent Sixth Amendment protections because Defendant was indicted prior to the interview.[50] Defendant argues that while his statements were not coerced, Defendant "did not fully understand the nature of the rights and the consequences of abandoning them, thus making the waiver invalid."[51] The Court must look at the totality of the circumstances to determine if Defendant had the requisite comprehension including: the defendant's age, intelligence, education, past experience with the criminal justice system, and if the defendant was properly read his *Miranda* rights.[52]

Defendant does not dispute that he was properly read his *Miranda* rights. Two minutes after the *Miranda* warnings, the Defendant began to make incriminating statements.[53] Defendant was 23 at the time of the interview,[54] and Defendant has

---

[48] *Keis v. State*, 195 A.3d 780 (TABLE), 2018 WL 4929449, at *2 (Del. 2018).
[49] *Id.*
[50] State's Supplemental Brief [hereinafter "State's Supp. Br."] at 3.
[51] Def.'s Supp. Br. at 7.
[52] *See, e.g.*, *Johnson*, 2005 WL 1953006, at *6.
[53] *See* State's Resp. Ex. 2. at 5:33–12:3.
[54] State's Supp. Br. at 9.

not suggested he has any mental limitations that would render him unable to understand the warnings. Detective Jones repeatedly checked with Defendant, ensuring that he understood the rights, and that Defendant wanted to waive them, before proceeding.[55] Defendant has experience with the criminal justice system,[56] including the first interview related to this investigation where Defendant exercised his *Miranda* rights and refused to speak.[57] While the Detective questioned Defendant about his understanding of his rights, Defendant stated "I know how this work."[58] Like in *Turner* and *Keis*, this Court considers Defendant's prior law enforcement interactions in favor of finding a valid waiver because the previous experiences inform his decision making and comprehension here.

The more nuanced issue arises from the State's and Defendant's disagreement over whether the Detective's conversation between the time Defendant invoked his right to silence and when Defendant waived his right by proceeding to speak constituted an interrogation. Since interrogation must cease as soon as the right to silence is invoked, if the interim conversation was an interrogation, then the police

---

[55] State's Resp. Ex. 2 at 10–11 (using phrases like "at any time we can stop talking," "do you understand those rights that I read to you?" "each and every one of them?" "you understand you've been indicted?" "you totally understand what I just read to you?" "And you're willing to talk?").

[56] The Court relies on the State's representations in its supplemental briefing for a detailed history of Defendant's interactions with the criminal justice system and law enforcement. Defendant did not dispute the State's characterizations. Nonetheless, the Court only considers these examples for the fact that Defendant has had prior contact with law enforcement, and nothing more.

[57] Def.'s Mot. at 2.

[58] State's Resp. Ex. 2 at 11:38.

15

violated Defendant's rights regardless of any subsequent waiver. The Court heard from Detective Jones at the suppression hearing and finds his testimony credible.[59] The Detective testified that he answered Defendant's questions because that was how he would have spoken to any other person, rather than as a tactic to illicit information. The Court thus does not consider this interim discussion an inappropriate interrogation.[60]

Based on the totality of the circumstances, the Court does not find that Defendant was unaware of his rights when he waived them. Even though Detective Jones did not discuss Defendant's right to talk to an attorney in his clarifying questions, Defendant's age, mental capacity, original invocation of his right to remain silent, but not his right to counsel, and Defendant's own statement that "I know how this work," indicates that Defendant understood his rights. By proceeding to talk to Detective Jones and ask questions, Defendant knowingly and voluntarily waived his Sixth Amendment right to counsel.

## II.    Fifth Amendment Right to Silence

The Fifth Amendment extends the privilege against self-incrimination to an individual's right to remain silent when subject to custodial interrogation.[61] The

---

[59] *See State v. Garnett*, 2022 WL 610200, at *3 (Del. Super. Mar. 1, 2022) ("In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses.").

[60] For further analysis of "interrogation" see *infra* at page 20–22.

[61] *Miranda*, 384 U.S. at 467–68.

right is "so fundamental to our system of constitutional rule" that *Miranda* warnings must always be given, even if the accused already knows the right.[62]  Once the right is invoked, a subsequent statement is only admissible if courts apply a two-part test: (1) the prosecution must prove that the accused reinitiated contact with police, and (2) that the accused validly waived his previously invoked right.[63]  The test protects against "police badgering or overreaching in an effort to wear down the accused[.]"[64]  Any waiver must be "knowing, voluntary, and intelligent" and based on "free and deliberate choice rather than intimidation, coercion or deception."[65]  The State bears the burden of "proving both a right to silence waiver and the voluntariness of a confession"[66] by a preponderance of the evidence.[67]  The right does not need to be invoked immediately after being read the *Miranda* rights, but must be respected from that moment onwards.[68]

---

[62] *Id.* at 468–69 ("Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact.").

[63] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[64] *Id.* at 1101.

[65] *Norcross v. State*, 816 A.2d 757, 762 (Del. 2003) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). *Norcross* was reversed on unrelated grounds; thus, the Court still considers the unreversed grounds good law.

[66] *Garvey*, 873 A.2d at 296.

[67] *State v. Ward*, 2018 WL 3752753, at *3 (Del. Super. Aug. 7, 2018) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

[68] *State v. Pulliam*, 2012 WL 6845693, at *7 (Del. Super. Dec. 13, 2012).  *See also Ward*, 2018 WL 3752753, at *3 ("The right to silence may be invoked, in any manner, at any time before or during a custodial interrogation.").

As with the Fifth Amendment right to counsel, Delaware Constitution Article I, § 7, expands the protection to require police to clarify a suspect's unequivocal invocation before continuing.[69] This clarifying approach is "vital to safeguarding the values embedded in the Fifth Amendment right to silence[.]"[70] To be unequivocal, an accused may be indecisive or contradictory as to whether or not they wish to waive their right.[71]

Determining whether an invocation is ambiguous is a case-by-case review of the totality of the circumstances.[72] An implied waiver can be found by considering the defendant's conduct, his age, his experience, and his intelligence.[73] Delaware applies a two-part test to determine an effective waiver: (1) the waiver must "have been voluntary in the sense that it was the product of a free and deliberate choice

---

[69] *See, e.g.*, *Norcross*, 816 A.2d at 762 (internal citations omitted).

[70] *Garvey*, 873 A.2d at 296–97.

[71] *Id.* at 297–98. *Garvey* provides examples of ambiguous statements including "I might want to speak to a lawyer," "Maybe I should talk to a lawyer" and "That's all I know, and I don't have anything else to say." *Id.* at 297. Comparably, "I want to know what [the codefendant] said" and "I'll help you out as much as I can" are not ambiguous invocations of the right to silence. *Id.* at 298. *See also State v. Charles*, 2021 WL 4238692, at *1 (Del. Super. Sept. 9, 2021) (quoting *Garvey*, 873 A.2d at 297) ("An ambiguous waiver is one that 'displays a measure of indecision on the part of the defendant that casts doubts on the validity of the interrogation process.'").

[72] *Pulliam*, 2012 WL 6845693, at *5 (citing *Garvey*, 873 A.2d at 297).

[73] *Ward*, 2018 WL 3752753, at *3 (citing *Wahlen v. State*, 434 A.2d 1346, 1351 (Del. 1980)). *See also Charles*, 2021 WL 4238692, at *4. In *State v. Charles*, the court denied a motion to suppress even though police "could have done a much better job in clarifying whether the Defendant totally understood his *Miranda* rights[.]" *Id.* The accused was fifteen, had a criminal history, there was no evidence of coercion or intimidation, and he appeared "motivated to tell his side of the story." *Id.* The original ambiguous statement of "No—well, yes" to speaking, was sufficiently clarified by the officer who then asked, "Is that a yes?" and got an affirmative response. *Id.* at *3. The statements were not suppressed. *Id.* at *4.

18

rather than intimidation, coercion, or deception, [and (2)] the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[74]

The Court now turns to the application of this panoply of case law to the specific facts presented here. Defendant raises four issues: (1) Defendant did not understand his *Miranda* right to remain silent; (2) Detective Jones's continued discussion with Defendant, after Defendant invoked his right to remain silent, violated Defendant's Fifth Amendment right to silence; (3) Detective Jones's statements to Defendant were coercive when the Detective reinforced the severity of Defendant's charges; and (4) Defendant did not waive his Fifth Amendment right by reinitiating conversation with Detective Jones.

First, Defendant concedes that the interview was not coercive or intimidating. Like for the right to counsel arguments *supra*, Defendant argues that he did not understand his rights, and Detective Jones's clarification was insufficient. Defendant was 23 years old when interviewed, and has had significant interactions with law enforcement, including at least one interaction regarding the murder at issue in this case where Defendant invoked his right to silence.[75] Even in this interview, Defendant originally asserted his right stating, "uh nah" in response to

---

[74] *Hubbard*, 16 A.3d at 917 (quoting *Moran*, 475 U.S. at 421).
[75] Def.'s Mot. at 1–2.

"are you willing to talk to us?" and a definitive "No" when the officer sought to clarify his ambiguous first answer.[76]

The parties here dispute the relevance of *Upshur v. State* to these facts. In *Upshur*, the Supreme Court of Delaware held that despite first invoking his right to speak to an attorney by definitively saying "I'd like an attorney," the defendant subsequently waived his right when he "reinitiated the interrogation following a non-coercive intervening conversation about the nature of the charges and his custodial status."[77] The Court agrees there is a similarity to *Upshur* in that Defendant invoked

---

[76] State's Resp. Ex. 2 at 8:7–8:13.
[77] *Upshur v. State*, 844 A.2d 991 (TABLE), 2004 WL 542164, at *1 (Del. 2004). The relevant portion of the conversation included:

D (Defendant): I'd like an attorney.
O (Officer): Okay.
D: The only reason I want an attorney is some of these charges.
O: Well, I'm gonna . . . (Then there is an inaudible answer)
O: Well, I have to explain the charges. I haven't even had a chance to tell you. What I'm saying is, if you want an attorney, we'll stop right now, I'll get up and I'll leave, and we're done. I can't question you any further. If you want to answer some of the questions and not answer one that's entirely up to you.
D: Can I ask you a question?
O: Well, if you need to, I can answer you.
D: Regardless of what I do, will I still have to be locked up today? That's what I need to know.
O: You'll be charged today.
D: Will I have to be locked up because I'm concerned about my kids and everything else?
O: I understand that. Let me explain something to you one more time, Mr. Upshur. You're asking me to answer questions, and we're gonna go back and forth. What I'm trying to say is, I'm more than willing to do that. Like your rights say, you don't have to answer all the questions. You can stop during the questions, but you're saying that you want a lawyer.
D: Well, I'll answer your questions.

*Id.*

20

his right to silence, then reinitiated conversation with Detective Jones by asking about the charges. Defendant's original invocation of his right to silence, therefore, is not dispositive of any subsequent waiver.

The second issue is whether Detective Jones's continued discussion, after Defendant's invocation of his rights, violated Defendant's Fifth Amendment right to silence. Interrogation must cease after the right to silence has been invoked, but this Court does not find the interim conversation between Detective Jones and Defendant after Defendant invoked his right was an interrogation. Instead, the Court finds it is similar to the permissible conversation in *Upshur*. The statements made by Detective Jones here were statements of fact informing Defendant of his charges up until the last statement which was "Any questions?"[78] Defendant argues this question was asked to elicit a response. The Court agrees that any question undoubtedly elicits an answer but disagrees that "any questions?" was intended to elicit *incriminating* responses. Interrogation is not questioning alone, but rather questions intended to elicit an incriminating response.[79] A plain understanding of the conversation suggests—and is reinforced by Detective Jones's testimony—that

---

[78] *Id.* at 9:9–9:11.

[79] *See Rhode Island v. Innis*, 446 U.S. 291, 292 (1980) (defining interrogation as not only questioning, "but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect").

21

the Detective was merely filling Defendant in on what was going on, not seeking incriminating answers about the charges.

Defendant's third issue is that the Detective's statements were coercive when Detective Jones reinforced the severity of Defendant's charges. In the Supplemental Briefing requested by the Court, Defendant concedes that Detective Jones's behavior was not coercive, but instead argues that the statements regarding severity was an interrogation because it was "likely to elicit an incriminating response."[80]

*Tolson v. State* provides guidance to the Court in the circumstance when law enforcement informs an accused of the charges he faces.[81] In *Tolson*, the court admitted statements when the accused "initiated the conversation when [the accused] became disruptive and repeatedly asked what charges he faced."[82] The court held that "[e]numerating the charges against [the accused], without more, was consistent with the booking process and it was not foreseeable that the enumeration would elicit an incriminating response."[83] Merely informing the accused of his charges here was not an interrogation requiring *Miranda* warnings.[84] Similar to *Tolson*, Detective Jones informing Defendant of his charges was not, without more, an interrogation

---

[80] Def.'s Supp. Br. at 4.
[81] *Tolson v. State*, 900 A.2d 639 (Del. 2006).
[82] *Id.* at 644.
[83] *Id.*
[84] *Id.*

22

likely to elicit an incriminating response. The fact that Defendant faced serious charges has no effect on the informative tone of the conversation.

Despite Defendant's concession, the Court analyzes independently whether Detective Jones's behavior was coercive and finds no evidence of such. *State v. Ward* is helpful to the Court on this issue.[85] In *Ward*, the accused originally consented to speak after being read the *Miranda* rights, but then when asked about a murder, stated "No, there's probably cameras all in here."[86] The State conceded the statement was ambiguous and the officer sought to clarify the intent of the statement.[87] The detective then began to leave the room until the accused stated "let me talk to you" and offered to talk if the detective could reduce his bail.[88] The detective clarified that the defendant could speak to his attorney about that, and the accused responded with another ambiguous statement, "nah bro."[89] The detective

---

[85] *State v. Ward*, 2018 WL 3752753 (Del. Super. Aug. 7, 2018).
[86] *Id.* at *2.
[87] *Id.*
[88] *Id.*
[89] *Id.*

> Detective: What I can tell you is that if you get an attorney, when you get an attorney, you want to come talk and you want to come talk to me, you can request that. I will go up there and talk to you guys to help yourself out.
> [Defendant]: I'm not trying to get quizzed . . .
> Detective: You can talk to me to help yourself out.
> [Defendant]: Nah bro.

*Id.*

continued to ask questions and the accused eventually made incriminating statements.[90]

The court in *Ward* held that the interview was not conducted in a coercive or intimidating way and found the defendant explicitly waived his *Miranda* rights. First, the interview had a "relaxed and friendly" tone that remained throughout the interview.[91] Second, the defendant explicitly waived his *Miranda* rights by stating, "let me talk to you," but the court noted even an implicit waiver could be found given the casual demeanor of defendant, his immediate answering of the detective's questions and "[t]he close temporal proximity between the advisement of the rights and the start of questioning strongly support that [the accused] knowingly, intelligently, and voluntarily waived his *Miranda* rights."[92] The accused's attempts to place conditions on his willingness to speak was "another factor supporting the finding of an implied waiver by conduct."[93]

Like in *Ward*, the recording of Defendant's interview here shows Defendant appearing relaxed, even smiling and mentioning that he recognized one of the officers from a previous interaction. Defendant was not handcuffed,[94] nor did the

---

[90] *Id.*

[91] *Id.* at *4.

[92] *Id.* at *5.

[93] *Id.* Note that the court held that anything said after the second ambiguous statement, "nah bro," was suppressed because the officers failed to clarify again if the defendant meant "nah" to talking to his lawyer or to the officer. *Id.* at *7.

[94] The Court notes there was a discussion of this at the oral argument, but upon review of the recording, Defendant was not handcuffed while in the interrogation room.

officers push him to discuss the charges after mentioning them. This relaxed tone weighs in favor of finding a waiver. Additionally, the entire interview lasted approximately one hour, and Defendant started speaking within the first few minutes of the discussion. *Ward* also emphasized how the close temporal proximity of the rights and waiver favors the State. Here, two minutes is an undeniably close proximity in time, weighing in favor of denying suppression.

The final issue Defendant challenges is whether Defendant waived his rights by reinitiating conversation with Detective Jones. Defendant claims he did not understand the rights he was waiving. *Hubbard v. State* guides this Court on how to assess a defendant's understanding in this situation.[95] In *Hubbard*, the accused contested that he did not understand the rights he was waiving because the warnings were given too quickly, and he did not sign a written waiver of those rights.[96] The Supreme Court of Delaware affirmed that there is "no 'precise formulation' necessary to satisfy the requirements of *Miranda's* procedural safeguards."[97] The court found that the rights were adequately given, the accused never invoked his right to remain silent and affirmatively agreed to answer questions even after the officer clarified his willingness to do so.[98] The court also noted that the accused was

---

[95] *Hubbard v. State*, 16 A.3d 912 (Del. 2011).
[96] *Id.* at 917.
[97] *Id.* at 918 (citing *Florida v. Powell*, 559 U.S. 50, 60 (2010)).
[98] *Id.*

27 and had significant experience with the justice system, so there was adequate evidence to find "an express waiver of his *Miranda* rights by his words and his actions."[99]

Similar to *Hubbard*, the Court is not persuaded by Defendant's claim that he "did not fully understand the nature of the rights and the consequences of abandoning them"[100] because of Defendant's past interactions with police, including previously invoking his rights, his assertion when first asked if he had heard of *Miranda* warnings that he was familiar with *them*,[101] and that he "know how this work."[102] The officers complied with Delaware's higher standards for *Miranda* by clarifying that Defendant was comfortable waiving his rights by asking follow up questions, and repeating portions of the warnings, to which Defendant replied affirmatively.[103] At the time of the interview, Defendant was 23, there are no allegations that Defendant had any physical or mental limitations impeding his ability to understand, and he actively asked the officers questions about the information he was provided reinforcing his understanding.

---

[99] *Id.* at 918–19.
[100] Def.'s Supp. Br. at 7.
[101] State's Resp. Ex. 2 at 5:43–6:7.
[102] *Id.* at 11:38.
[103] *Id.* at 10:2–11:42.

The Court further notes that at one point Defendant attempted to "get [himself] out of this situation" by providing information.[104] In *Garvey v. State*, the Supreme Court of Delaware admitted statements made after the defendant said, "depends on what you ask me" because that phrase was contingent, indicating that the "speaker necessarily must understand the import of the original request."[105] This phrase also demonstrated that the accused "heard and understood his rights."[106] The statement, combined with the accused continuing to answer questions, while not stating he wished to stop answering, was an unambiguous waiver of his *Miranda* rights, so no clarification was necessary.[107] Similar to *Garvey*, Defendant here spoke with hopes of helping his own case, showing that he understood what was happening, and the consequences of his waiver.

This Court, therefore, finds that the State has proved by a preponderance of the evidence that Defendant understood the nature and consequences of the right to silence when he waived it both explicitly after the detective clarified, and implicitly by answering questions and not repeating a request not to speak. There was a voluntary, knowing, and intelligent waiver of Defendant's right to silence after Defendant reinitiated conversation with the officers.

---

[104] *Id.* at 19:20–20:37. The Court acknowledges that this statement was after the original waiver of Defendant's rights, but it is additional evidence that Defendant understood the consequences of his situation.

[105] *Garvey*, 873 A.2d at 298.

[106] *Id.* at 299.

[107] *Id.*

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**